In the Matter of the Construction of the Will of MARCUS BRUCKHEIMER, Deceased.

Surrogate's Court, Westchester County, November 9, 1942.

*Morris Metz*, as executor and trustee on behalf of the executors and trustees under the will of Marcus Bruckheimer, deceased, petitioner in person.

*Walter M. Weis* and *Seymour J. Wilner* for Ruth B. Oppenheimer.

*Nathan, Mannheimer & Asche* for Milton Bruckheimer.

*Edgar M. Stern* and *Ruth E. Stern*, grandchildren, and others, in person.

MILLARD, S. This is a proceeding brought for the purpose of obtaining a determination as to the validity, construction and effect of certain dispositions of property contained in the decedent's will and codicil thereto. The decedent died on April 20, 1942, leaving a will dated December 29, 1939, and a codicil thereto dated March 5, 1941. The aforesaid testamentary instruments were duly admitted to probate by this court on May 16, 1942.

Under paragraph " Third " of the will, the testator bequeathed his automobiles, jewelry, personal effects and household furniture and effects to his wife. Paragraph " Second " of the codicil to the will provides that any assets not included within the corporate assets of M. & L. Bruckheimer, Inc., shall be invested, included and incorporated in the assets of said cor-

poration. Prior to the execution of the codicil, the testator had given such corporate assets in trust for the benefit of his widow and son under paragraph "Fourth" of the will. It is suggested that paragraph "Second" of the codicil might be construed as a revocation of the bequests made under paragraph "Third" of the will. Counsel for all parties have overlooked the provisions of paragraph "First" of the codicil, which reads as follows: "First: I direct that all and any bequests that I have made shall be free from any and all State Inheritance Succession and other death taxes that may be imposed at the time of my death."

From a reading of the above-quoted paragraph of the codicil, it becomes apparent that the testator did not intend to amend, modify or revoke any of the provisions contained in paragraph "Third" of the will. Nevertheless, leaving aside any interpretation of the above-quoted language, it is well settled that in order to qualify or cut down an absolute gift the subsequent language of the will purporting to do so must be unequivocal and imperative. (*Tillman* v. *Ogren,* 227 N. Y. 495, 505; *Matter of Forde,* 286 N. Y. 125, 129.) In my opinion, the phraseology of the codicil does not disclose an intention either to qualify or revoke the bequests made under paragraph "Third" of the will.

Paragraph "Seventh" of the will provides as follows: "Seventh: I direct further that my home in Scarsdale, Westchester County, be preserved for the use of my wife and such others as she may designate, as long as she lives or as long as she and my other executors and trustees deem it advisable. I direct that no action shall be valid or shall be taken by my executors and trustees with respect to this property without the consent of my wife and my other executor Morris Metz, or in the alternative Beatrice D. Metz."

The petitioner seeks a determination particularizing the expenditures required to be made in preserving the home for the widow, and also a finding as to whether the principal account or the income account shall be charged with such expenditures. The preservation of the home requires defrayment of mortgage interest, taxes, repairs, insurance and other fixed charges. The payment of such charges insures both the continuance of ownership of the property and the maintenance of the existing physical condition thereof. On the other hand, public utility services such as electricity, telephone and water are for purposes in connection with the enjoyment of the property and not for its

preservation, and therefore are not chargeable against the estate. (See *Matter of Burton,* 143 Misc. 440, 442, 443.)

The expenses necessarily incurred in preserving the home must be charged against principal. In the absence of a provision for the payment thereof out of income, it is entirely consistent with the testamentary plan to so hold. In view of the imperious direction to the executors and trustees concerning the preservation of the home, it is clear that such charges were intended to be paid whether there should be sufficient income or not. If the charges were to be paid out of income, then the benefits contemplated under the earlier provisions in the will, directing payment of income to the widow, would be materially lessened. Inasmuch as the widow was the primary object of the testator's bounty, it is natural to assume that he wishes the home to be preserved for her in any event, for so long as she desired.

One of the respondents herein contends that the trust created in the residue of the estate under paragraphs " Fourth ", " Fifth " and " Sixth " of the will unlawfully suspends the power of alienation of property. It is well settled that a testamentary instrument will not be construed to violate the statutes prohibiting the suspension of the power of alienation, unless that intent is unmistakably demonstrated. (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462, 471.) There also exists in the law a forcible canon that requires a will to be construed, if possible, so as to avoid intestacy. (*Waterman* v. *New York Life Ins. & Trust Co.,* 237 N. Y. 293; *Matter of Winburn,* 265 N. Y. 366, 375.) Under paragraph " Fourth " of his will, the testator clearly measured the duration of the trust by the lives of his grandchildren, Edgar M. Stern and Ruth E. Stern. Paragraph " Sixth " of the will merely provides for an earlier termination of the trust conditioned upon the happening of events during the lifetime of one of the persons whose lives measure the trust term. There is no subsequent language in either the will or codicil thereto which unmistakably extends the duration of the trust beyond the lives of the two persons specifically designated in the aforesaid paragraph " Fourth " of the will. It is apparent, therefore, that the statutes of the State of New York which prohibit the suspension of the power of alienation (Real Property Law, § 42; Personal Property Law, § 11) have not been violated.

From a reading of subdivision A-1 of paragraph " Fifth " of the will, it is clear that the testator wished his son to receive that

portion of income of the trust therein specified during his lifetime, limited, however, by the duration of the trust as measured in paragraph "Fourth" of the will. Such conclusion is supported by the subsequent provisions for distribution, after the widow's death, only of the income allocated to her. There is no alternative provision for distribution of the income allocated to the son in the event that the decedent's widow should predecease him. The payment of $15 per week under subdivision A-1 of paragraph "Fifth" of the will is therefore clearly a prior charge against income during the lifetime of the testator's son, for the duration of the trust.

Paragraph "Eighth" of the will reads as follows:

"Eighth: I direct that during the life of my wife only, my executors and trustees may use the principal of this trust for the following purpose:

"A. To make up the amount necessary to total the sum of Seven Thousand Five Hundred ($7,500.00) Dollars, which is the minimum amount to be provided for the maintenance and support of my wife, after payments have been made to my son Milton."

The above-quoted provision directs an invasion of principal to the extent necessary to provide a minimum payment of $7,500 to the widow under subdivision A-2 of paragraph "Fifth" of the will. The difficulty encountered here arises out of the failure on the part of the draughtsman to fix the period of time to be used as a base in ascertaining whether or not a minimum income of $7,500 became available to the widow. The income of realty or personalty has so generally been regarded to be computed on an annual basis that judicial consideration of the point has not been frequently sought. However, in construing the intention of the testatrix with regard to the rents and profits of real estate, it was enunciated in *Delaney* v. *Van Aulen* (84 N. Y. 16, 19) that "Generally speaking, the interpretation of the words 'rents and profits' is, that they mean the annual rents and profits." In *Matter of Leonard* (118 Misc. 598, 600) the court said that "The word 'income' means annual receipts from property." Being guided by common usage of the word and the recognition of such usage accorded by the authorities cited, I determine that ascertainment of the minimum amount contemplated under paragraph "Eighth" of the will must be founded upon a computation of the income under subdivision A-2 of paragraph "Fifth" of the will on an annual basis. To employ a measure of time longer than the annual period would clearly work a hardship on the widow, for, in view of the prob-

able duration of the trust, the widow might then conceivably be deprived of all benefit under the direction for invasion of principal during her lifetime.

The petitioner seeks a construction of paragraph " Seventeenth " of the will, which prohibits the assignment of trust income until it has accrued and become payable. There is no such assignment before me; nor is the assignee under such purported assignment a party to this proceeding. Since under the circumstances the question is academic, it will not be decided. (*Matter of Mount,* 185 N. Y. 162, 170; *Matter of Hoole,* 156 Misc. 821, 823.)

The will is so construed. Settle decree.