IN RE ESTATE OF LUCY V. BARRETT, DECEASED.
FRANK R. STUCKEY ET AL., APPELLANTS, v. HYMEN
ROSENBERG, EXECUTOR OF THE ESTATE OF LUCY
V. BARRETT, DECEASED, ET AL., APPELLEES.
100 N. W. 2d 526

Filed January 8, 1960. No. 34663.

*Mason, Knudsen, Dickeson & Berkheimer,* for appellants.

*Field & Ricketts* and *Ginsburg, Rosenberg & Ginsburg,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The issue on this appeal is whether or not the will of Lucy V. Barrett, deceased, directs that the gifts therein made to Ella Saul and Lebbie Blocker were bestowed on them without deduction of state inheritance and federal estate taxes.

Lucy Virginia Barrett, also named in the record as Lucy V. Barrett, herein referred to as testatrix, died testate, a resident of Lancaster County on December 30, 1956, and her will and the codicil thereto were each admitted to probate by decree of the county court of

that county February 27, 1957. Proceedings for the administration of the estate of the testatrix were had in the county court of Lancaster County; that court determined the inheritance taxes due; and Hymen Rosenberg, the executor of the will and estate of the testatrix, paid a substantial federal estate tax. Frank R. Stuckey and Charles S. Stuckey, appellants and the residuary legatees and devisees under the will of the testatrix, by proper application made in that court asked that each beneficiary of a gift by the terms of the will or codicil be required to pay his inheritance tax and a share of the federal estate taxes for the gift. The executor asked instructions of the court in reference thereto. An answer and objections were filed by Ella Saul and Lebbie Blocker, also named in the record as Lebbie Blocher, to the application of appellants for apportionment of state inheritance and federal estate taxes. The issues tried and determined in the county court in this respect were: What if any inheritance taxes were required to be paid by Ella Saul and Lebbie Blocker; what if any of the federal estate tax should be borne by either of them; and how the amount of the inheritance and estate taxes should be collected and from whom. The county court sustained the objections of Ella Saul and Lebbie Blocker, collectively designated hereafter as appellees, to the application of appellants for apportionment; denied the application of appellants; and ordered the executor to make distribution of the estate in accordance with the final decree of distribution entered in the administration proceeding without apportionment of state inheritance or federal estate taxes to the gifts or shares of appellees.

An appeal was prosecuted to the district court for Lancaster County by appellants and identical issues were raised as had been before the county court concerning the taxes, the apportionment thereof, and the payment of them. The adjudication by the district court was in substance the same as that of the county

court. A motion for a new trial was denied and this appeal is from the action of the district court.

The assignments by appellants are in substance: That the district court erred by failing to require that the determined inheritance and apportionable estate taxes on the life estate devised to Ella Saul and on the remainder devised to appellants be charged against and satisfied out of a half-section of land specifically subject to that disposition by the will of the testatrix; and by failing to require that the determined inheritance and apportionable estate taxes on annuities of $100 per month each to appellees be paid by them in full immediately or collected in effect by an actuarially computed credit serving to reduce the monthly payments.

The will of the testatrix gave to Ella Saul, characterized as "my friend and faithful companion," the household furniture in the house on the premises now occupied by Ella Saul "without any restrictions whatsoever." The will devised to Ella Saul a life estate in the premises above referred to with full right to use the premises and every part thereof during her natural life and during that time all income of every nature whatsoever from the land. Appellants, nephews of the deceased and the residuary beneficiaries under the will, or the survivor of them, were required to pay the taxes on the land during the life of Ella Saul "to the end that said property herein described and in which I have given said Ella Saul a lifetime estate shall be fully protected during the time that the said Ella Saul is entitled to the use of the premises * * * which is for her natural life." Appellants were required to "make all needed repairs to the improvements on said premises, including well repairs." The will also provides: "Beginning with the date of my death, I direct my executor to pay to the said Ella Saul, the sum of One Hundred ($100.00) Dollars per month during the time that said estate is being administered, payable monthly and direct that said sum be made a charge against my estate." From the

time the estate was closed and the executor discharged the appellants or the survivor of them were required to continue to pay to Ella Saul the sum of $100 each month during her lifetime and this obligation was made a perpetual lien on the real estate devised by the will to appellants. The payments to Ella Saul were to cease at her death and the lien on the real estate was to be discharged at that time if during her life appellants fully complied with the requirements of the will so far as she was concerned. The land in which Ella Saul was devised a life estate was encumbered by a mortgage of about $10,000. The executor was directed to pay the indebtedness secured by the mortgage as soon as possible after the death of the testatrix from her personal property; and if it was not sufficient, the executor was directed and empowered to sell real estate and liquidate the mortgage. The testatrix recited in her will that she was indebted to Ella Saul, her faithful friend and companion, because of a written contract of July 13, 1934, in the amount of about $1,000 with interest from October 24, 1932, and the testatrix directed her executor to pay the amount thereof to Ella Saul as soon as possible after the death of testatrix from the personal property; and if it was not adequate to do so, then the executor should sell real estate and from the proceeds thereof pay the indebtedness to Ella Saul. The testatrix said in her will that this indebtedness might be barred by the statute of limitations but she gave positive instructions to pay the indebtedness to Ella Saul "regardless of whether said indebtedness may or may not be a legal obligation binding upon my said estate." A provision of the will made the payment of all taxes on the land in which Ella Saul was devised a life estate, the monthly payments to Ella Saul during her lifetime, the payment of the mortgage referred to above, and the repairs to the well and improvements on the land "a positive lien on any and all land of which I die seized * * *."

The will of the testatrix was made November 27, 1943, and a codicil thereto was made April 22, 1954. It gave to "my faithful friends and companions, Ella Saul and Lebbie Blocker" all the livestock owned by the testatrix at the time of her death, and expressed confidence of the maker that "my good friends" will make "an amicable division of the cattle of which I may die seized." The codicil directed appellants or the survivor of them to provide for the care of Ella Saul if she should become ill or be placed in a nursing home. The purpose of this requirement was to provide for Ella Saul if she should become so ill she could not care for herself or in the event that it was necessary or to her best interest that she be placed in a nursing home. The codicil made provision for the payment "beginning with the date of my death * * * to my faithful friend and the caretaker of some of my real estate holdings, Lebbie Blocker," of $100 per month, payable monthly, during his lifetime in the identical language as the gift of a like amount to Ella Saul during her lifetime as above recited. Likewise there was a provision in the codicil for the care of Lebbie Blocker if he became ill, afflicted, or disabled in the identical language as the provision for the care of Ella Saul as stated above. The codicil states if Ella Saul or Lebbie Blocker or either of them were placed in a nursing home and were there provided with care and sustenance, that they or the one of them confined shall not receive the payment of $100 per month during their or his or her illness or disability.

Ella Saul was the preferred and, disregarding the residuary clause, she was the major beneficiary of the will. The chief concern and anxiety of the testatrix was obviously the welfare of Ella Saul and Lebbie Blocker after the death of the testatrix. The will consists of 18 numbered paragraphs. The first nine of these concern incidental and quite minor matters. There are seven paragraphs which concern and are for the benefit of Ella Saul after the death of testatrix. The last

paragraph relates to the appointment and powers of the executor. The codicil to the will of testatrix is composed of eight numbered paragraphs, five of which concern and are for the benefit of Ella Saul or Lebbie Blocker or both. The remaining paragraphs relate to the revocation of a paragraph of the will, a confirmation of the will as modified by the codicil, and the disposition of items of furniture and relics on display in the Joslyn Memorial Building in Omaha. Lebbie Blocker was the preferred and principal beneficiary of the codicil. Ella Saul was nearly 66 years of age and Lebbie Blocker was slightly less than 66 years of age when the testatrix died. The record is silent as to any property or estate owned by either of them except the benefits given them by the will and codicil of the testatrix and the indebtedness of testatrix to Ella Saul mentioned above.

Appellants argue that Ella Saul and Lebbie Blocker should be required to pay the inheritance taxes on the gifts they receive from the testatrix and that they should be compelled to pay the share of federal estate taxes attributable to the gifts they receive from the testatrix in the amounts used by the county court in computing and assessing the inheritance taxes on their gifts. Contrary thereto, appellees assert that the will and codicil contain language definitely evidencing the intention of the testatrix that the temporary estates given and devised to Ella Saul and Lebbie Blocker should not be diminished by the imposition of any death taxes. The issue is thus joined. If it is determined that Ella Saul or Lebbie Blocker is not liable for any death taxes, that will be dispositive of this appeal.

The estate tax apportionment statute, section 77-2108, R. R. S. 1943, provides in part as follows: "Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee, or other person acting in a fiduciary capacity, has paid * * * any estate tax levied or assessed under

Chapter 77, article 21, or under the provisions of any estate tax law of the United States * * * upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid or payable, except as otherwise directed in the decedent's will, * * * shall be equitably apportioned and prorated among the persons interested in the estate. Such apportionment and proration shall be made in the proportion as near as may be that the value of the property, interest, or benefit of each such person bears to the total value of the property, interests, or benefits received by all such persons interested in the estate * * *. In cases where a trust is created or other provision made whereby any person is given an interest in income or an estate for years, or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates."

The statute directing nonapportionment of inheritance tax, section 77-2008.02, R. R. S. 1943, is in this language: "In cases where a trust is created or other provisions made whereby any person is given an interest in income or an estate for years, or for life, or other temporary or contingent interest in any property or fund, the tax on both such temporary or contingent interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary or contingent estates, and any refund of taxes paid out of corpus shall again become a part of the corpus of such property or fund."

The will of the testatrix contains no express direction with respect to the payment of inheritance or federal estate taxes. This omission is not surprising since the will was made about 6 years before the adop-

tion of a tax apportionment statute by this state and more than 8 years prior to the effective date of the Nebraska inheritance tax apportionment statute. When the will was made, in the absence of a direction in the will, the law required all estate taxes to be paid by the residuary estate. Annotation, 37 L. R. A. 2d 109. The estate tax apportionment statute requires the estate tax to be equitably apportioned and prorated among the persons interested in the estate "except as otherwise directed in the decedent's will." § 77-2108, R. R. S. 1943.

In 28 Am. Jur., Inheritance, Estate, and Gift Taxes, § 486, p. 351, it is said: "It is competent for a testator to specify what property or class of property shall assume the burden of the tax on the transfer or the right of succession of his estate, as, for example, to provide that inheritance and estate taxes shall be paid out of the general or residuary estate, or out of any portion of his estate he may designate. The right by will to impose or relieve the burden of estate or inheritance taxes is universally recognized or assumed to exist, and statutes relating to the burden of the estate tax invariably exclude situations in which the testator directs otherwise in his will."

The author of Annotation, 37 A. L. R. 2d 13, says: "A testator who desires to shift the burden of taxation from the person or fund which is liable under the law to some other person or fund is free to employ any words or combination of words that he desires. A few simple words may suffice to indicate his intent and effectuate his purpose."

Sherman v. Moore, 89 Conn. 190, 93 A. 241, declares: "It is, however, competent for a testator to make a gift which shall not be subject to diminution by reason of a succession tax payment. The controlling consideration here, as everywhere, in the construction of wills, is the expressed intent of the testator." See, also, In re Estate of Duryea, 277 N. Y. 310, 14 N. E. 2d 369,

124 A. L. R 647; United States v. Goodson, 253 F. 2d 900; Brock v. House (Ky.), 318 S. W. 2d 409; Cuppett v. Neilly (W. Va.), 105 S. E. 2d 548; Estate of Nesbitt, 158 Cal. App. 2d 630, 323 P. 2d 474.

It is certain that in each instance the intention of the testator as expressed in the will, considered as a whole, is controlling in determining if there shall be apportionment of taxes.

Weller v. Noffsinger, 57 Neb. 455, 77 N. W. 1075, states: "No rule of law is better settled, or more in accord with good sense, than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. * * * The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it."

It is stated in Hiles v. Benton, 111 Neb. 557, 196 N. W. 903: "Such may have been the implication of Loosing v. Loosing, 85 Neb. 66, but in Kluge v. Kluge, 103 Neb. 534, and Grant v. Hover, 103 Neb. 730, and other comparatively late cases, this court has plainly said, following the Nebraska statute, that it is the intention of the testator which will govern, and not the mere letter of his language."

The recent decision in Abbott v. Continental Nat. Bank, *ante* p. 147, 98 N. W. 2d 804, reiterates this doctrine: "In searching for the intention of the testator the court must examine the entire will, consider each of its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used."

The testatrix said the devise of the life estate in a half-section of Lincoln County land to Ella Saul was "with full right to use said premises and every part thereof during her natural life and during said life, she shall be entitled to all of the income of every nature

whatsoever, from said land in this paragraph described." The testatrix directed appellants, her nephews and residuary beneficiaries, to "pay the taxes" on the land during the life of Ella Saul "to the end that said property herein described and in which I have given the said Ella Saul a lifetime estate shall be fully protected, during the time that the said Ella Saul is entitled to use the premises * * * which is for her natural life." The testatrix required appellants to "make all needed repairs to the improvements on said premises, including well repairs" and she made "these provisions a lien" on all the extensive real estate which she devised to appellants. Ella Saul thereby got substantially more than the usual life estate in which the life tenant would be liable for taxes and to make repairs and improvements. The intention of the testatrix was made undoubted when she gave Ella Saul not only the full use during her life of the land and the improvements thereon, including the house where Ella Saul was living, but also of all the household furniture in the house "without any restrictions whatsoever" and the common silverware then used by Ella Saul, and required the mortgage indebtedness on the land to be promptly paid after the death of the testatrix. Obviously the testatrix intended to provide, and she thought she had provided, a comfortable home for Ella Saul, her "faithful friend and companion," for the remainder of her life, with the right to all income and profits from the farm on which the home was located; all this with a guarantee of freedom from a single expenditure for rent, taxes, upkeep, repairs, or replacements. It would seem to be self-evident the testatrix intended that there should be no diminution of the gift she made to her faithful friend and companion on any account.

Appellants assert that Ella Saul must be required to bear the burden of the inheritance tax on the gift of a life estate which she received from the testatrix; that the statute says that a life estate is subject to in-

heritance tax at its appraised fair market value on the date of the death of the decedent; and that the portion of the value allocable to the temporary interest, that is the life estate, must be determined actuarially based upon the table provided by the state Tax Commissioner. § 77-2008, R. R. S. 1943. Appellants further say that the method of collecting the tax is that "the tax on both such temporary or contingent interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary or contingent estates * * *." § 77-2008.02, R. R. S. 1943. Appellants continue their argument by saying that the first sentence of section 77-2108, R. R. S. 1943, creates rights and obligations of parties with reference to the burden of estate taxes, is substantive, uses the word "shall," and is thereby a legislative mandate. They conclude that the taxes on the life estate instead of being paid out of the half-section of Lincoln County land have been satisfied out of the property in the residue of the estate contrary to section 77-2008.02, R. R. S. 1943, and the last sentence of section 77-2108, R. R. S. 1943, which require that where there is a life estate in property, the tax thereon shall be "paid out of the corpus of such property." These do not say out of the residue of the estate or out of the corpus of the residue but they speak of "such property" in direct reference to the property in which the temporary interest is held. Appellants assert further that the statutory sentence and its purposes are clearly applicable and must be given effect in this case; that the statute specifically gives power to the executor to sell the property in which Ella Saul was given a life estate in order to collect and pay the tax; and that it is doubtless true that a sale of the land must necessarily follow unless the parties can work out a more satisfactory solution. This contention of appellants includes an insistence that the half-section of Lincoln County land must be sold unless Ella Saul

makes some other arrangement satisfactory to appellants and that the inheritance tax on the life estate of Ella Saul and also the inheritance tax on the remainder subject to the life estate properly chargeable to appellants must be paid from the proceeds of the sale, the net proceeds must be invested, and the income therefrom only paid to Ella Saul during her lifetime.

The arguments of appellants or the end result thereof cannot be reconciled with the expressed intention of the testatrix that the property in which she gave Ella Saul a life estate "shall be fully protected, during the time that the said Ella Saul is entitled to use the premises * * * which is for her natural life." The argument of appellants in this regard is the very antithesis of the expressed intention of the testatrix. Appellants would not fully protect but would substantially destroy the usefulness and purpose of the gift made to Ella Saul. It would violate and wholly destroy the obvious purpose and intention of the testatrix that Ella Saul should not in any manner or for any purpose be disturbed in or deprived of the use and income of the land as her home during her lifetime. The contention of appellants in this regard cannot be sustained.

The will involved in Wright Estate, 391 Pa. 405, 138 A. 2d 102, empowered the executors " 'to borrow money to pay any debts or pay any taxes if (the executors) decide the time is not right for the selling of (testator's) securities in paying (his) bequests and debts.' " The residuary estate was by the will given and devised in equal shares to two named charities. The opinion contains this language: "The question, then, is, what did the testator intend, as disclosed by his will, the intent being permissively ascertainable from implication no less than from express direction. * * * A study of Mr. Wright's will reveals a donative scheme which is utterly inconsistent with the idea that the gifts to the pre-residuary legatees and devisee were to be subject to deduction for any death taxes in connection with the

decedent's estate. * * * We think the decedent's will clearly evidences an intention that the pre-residuary legatees and the devisee were to receive their testamentary gifts without diminution for any of the death duties incident either to the transmission of the decedent's property at his death or to the beneficiaries' receipt of it."

In re Bruckheimer's Estate, 193 Misc. 414, 38 N. Y. S. 2d 146, considered a provision of a will which provided in part:  " 'I direct further that my home in Scarsdale, Westchester County, be preserved for the use of my wife and such others as she may designate, as long as she lives or as long as she and my other executors and trustees deem it advisable.' "  The court said: "The petitioner seeks a determination particularizing the expenditures required to be made in preserving the home for the widow, and also a finding as to whether the principal account or the income account shall be charged with such expenditures.  The preservation of the home requires defrayment of mortgage interest, taxes, repairs, insurance and other fixed charges.  The payment of such charges insures both the continuance of ownership of the property and the maintenance of the existing physical condition thereof. * * * The expenses necessarily incurred in preserving the home must be charged against principal.  In the absence of a provision for the payment thereof out of income, it is entirely consistent with the testamentary plan to so hold.  In view of the imperious direction to the executors and trustees concerning the preservation of the home, it is clear that such charges were intended to be paid whether there should be sufficient income or not.  If the charges were to be paid out of income, then the benefits contemplated under the earlier provisions in the will, directing payment of income to the widow, would be materially lessened.  Inasmuch as the widow was the primary object of the testator's bounty, it is natural to assume that he wishes the home to be pre-

served for her in any event, for so long as she desired."

In re James' Estate, 180 Misc. 441, 40 N. Y. S. 2d 4, concerned a will which made various specific legacies to relatives and pecuniary bequests to a sister and a niece with directions as to each of the last two legacies that it be " 'paid to her as soon as may be after my death.' " The decision of the court contains this language: "Even more significant are two gifts in two separate trusts of $500,000 each for the benefit for life of her sisters, Mary P. Davidson and Maude P. Larson, respectively, with remainders to certain designated persons. In these gifts contained in paragraphs eighth and ninth of the will the language used is illuminative of a purpose to create these benefits in the full amount of the fund and undiminished by the apportionment and charge of any estate taxes. In each case the gift of the trust fund was to her executors in 'the sum of Five Hundred Thousand Dollars ($500,000.), *or property which they may value at that amount,* such valuation, when made by a majority of my executors to be conclusive for all purposes, * * *.' * * * The direction to set aside securities in the fixed amount precludes an inference that taxes were to be deducted."

In In re Thomson's Will, 43 N. Y. S. 2d 392, a will was involved which directed that $20,000 be invested in Liberty Bonds. The testatrix created a life estate and a remainder in this fund and she directed that in case of any shrinkage of the principal, an equal amount was to be deducted from all gifts made by the terms of the will with the exception of the $20,000 which she required to be " 'kept intact.' " In the opinion of the court it is said: "There remains to be considered the question as to whether the following article of the will indicates an intent that said legacy of $20,000 was to be preferred, and as to whether such language imports an intent that the estate taxes thereon should or should not be prorated among the recipients thereof: 'In case of any shrinkage of the Principle, an equal amount to

be deducted from every ones share with the exception of the amount of $20000, which is to be kept intact & the same to be invested as heretofore stated.' * * * It appears that as of the death of the decedent * * * her assets had dwindled to * * * an amount less than the sum total of all general legacies, and that consequently in all probability there must be an abatement. The direction that said amount 'be kept intact' clearly demonstrates an intent that said legacy was to be preferred over other legacies. * * * As to the second question with respect to the apportionment of estate taxes, it is well established that in the absence of a contrary testamentary intent, all legatees must bear their proportionate share of such taxes. * * * The established policy of this state, that estate taxes shall be prorated, is capable of testamentary reversal where the testator 'otherwise directs in his will'. Matter of Duryea's Estate, 277 N. Y. 310, 14 N. E. 2d 369; 124 A. L. R. 647. I am satisfied that the language of the will demonstrates a desire of the testatrix not only that the legacy in favor of her brother be preferred over other legacies, as hereinabove determined, but that also she intended that such legacy remain 'intact', unimpaired by any deductions whatsoever. The phrase 'which is to be kept intact,' interpreted in the light of the circumstance that the will is holographic, is a clear declaration that the said legatee is exempt from contribution to the payment of the estate taxes."

Estate of Pearson, 90 Cal. App. 2d 436, 203 P. 2d 52, involved the interpretation of a will. The court said: "Appellant contends that the language appearing in the will that 'said real property and premises herewith devised shall be free and clear of all liens of any kind and character and description' evidences an intent of testator that she should receive all of the property devised to her without deduction of the state inheritance tax or its prorata share of the federal estate tax. In answer thereto respondent in effect argues that at most

the provision in question could only be applicable to liens against the real property in existence at the time of the testator's death, such as mortgage liens or other evidence of indebtedness but not the liens, if any, attaching by virtue of federal estate or state inheritance taxes. * * * Turning to the said provision of the will it seems clear that the testator's intent was that appellant should receive the real property free and clear of all liens, since the provision by its terms is applicable only to the devise of the real property and by its context is not applicable to the bequests of personal property. To this extent we agree with respondent's contention but we cannot agree with his further argument that the liens created by the applicable taxing statutes are not such liens as were contemplated by the testator. * * * Neither the phrase 'at the time of my death' as stated in the will, nor 'at the date of death' as provided in the federal and state taxing statutes, appear to be wholly irreconcilable to one another. Possibly the phrase as used in the will is neither as clear nor as precise as it could be. However, that should not be allowed to defeat what appears to this court to have been the clear intent of the testator—that the petitioner herein should receive his home free and clear of all liens at the time of his death which, in accordance with such interpretation, would include the liens of both federal estate and state inheritance taxes as well as other evidences of incumbrance. * * * From our interpretation of the will as stated above it necessarily follows that in determining the amount of state inheritance and federal estate taxes which the executor was authorized to deduct from the share of the estate distributed to appellant, the value of the real property so devised cannot be considered."

In In re Furry's Will, 196 Misc. 763, 92 N. Y. S. 2d 349, the will considered by the court created a trust for the benefit of the wife of the testator and gave her the right to occupy a house. The trustee was directed to

pay " 'all charges accruing on said property while she so occupies same' " and the trustee was authorized to invade the corpus in the event of an accident, catastrophe, emergency, or prolonged illness of the wife. The court said: "The immediate beneficiary of the entire net estate of the testator is his widow, Ethel R. Furry. * * * The only additional material provisions of the will are that the trust created primarily for the widow's benefit is subject to invasion of corpus in the event of 'an accident, catastrophe, emergency or other prolonged illness' and that a power of sale of real estate is accorded subject, however, to the right of the widow to continue to live at testator's last residence * * * as long as she may choose to do so, the said trustee to *pay all charges accruing on said property while she so occupies same'.* * * * In the present case, the testator's failure to prescribe the source of the payment of the charges in question either from one or the other of the two possible alternatives makes it presently necessary that his most probable intent be gathered as indicated by the composite consideration of all the various criteria determinative thereof. * * * One of the primary rules of construction is that any question of intent must be resolved from a consideration of the will as a whole, gathered from its 'four corners'. In this connection, there are certain applicable observations. The testator first gave all of the net income from his entire estate to his wife. He next gave her the use of his residence to the full extent of her life if she shall choose to have it so. (If she might ever choose otherwise, the residence property must be sold and its proceeds incorporated in the trust for her benefit.) He also incorporated an invasion clause in relation to the trust to take care of his widow in the event of unforeseeable emergencies which he apparently contemplated might be beyond her financial ability to cope with. * * * These provisions of the will indicate beyond any serious question that the primary intent of the testator was to provide for his

widow in preference to any other beneficiary, none of whom were of any blood relationship to himself. He was a prominent industrialist who must, rationally, be assumed to have had in mind that the residence property would be unproductive of income as long as occupied by his widow, and that, if it might be necessary to use a great part of the income from the trust to pay carrying charges on the residence, it would endanger her security, only to result in some aggrandizement of gifts to other and secondary objects of his bounty. The invasion clause by itself indicates he thought he was providing for all contingencies including improbable emergencies. * * * I conclude that the testator's intent in respect to the direction to the trustee to 'pay the same' (charges accruing) was that he meant that such charges be paid from corpus."

In re Meynen's Estate, 173 Misc. 19, 18 N. Y. S. 2d 62, interpreted a will which contained a provision that the testator directed: " 'that out of my total estate available for distribution, shall be paid in full the legacy given to Katherine N. Ackert in paragraph Second of this my Will, and said legacy shall not abate unless said total estate is insufficient for this purpose, in which case it shall be used exclusively for its payment so far as possible.' " In the opinion the court said: "It is out of the balance remaining testator has directed that the legacy in question shall be paid. His intention to charge the available balance with the prior payment of the legacy is emphatically expressed. He desired that she should receive the full sum of $65,000, undiminished by any tax or other charge. Her legacy was not to abate unless his estate was insufficient to make payment in full, and in such contingency it was to be used exclusively for its payment so far as possible. I think the testator has clearly expressed an intention to relieve this legacy from sharing any burden of the taxes." See, also, Annotation, 37 A. L. R. 2d 132.

The monthly payments of $100 to Ella Saul and Lebbie

Blocker, respectively, were directed by the testatrix to be effective "beginning with the date of my death." The executor was directed to pay these amounts monthly from the estate of the testatrix to each of the named beneficiaries during the administration of the estate, and thereafter during the life of each of the beneficiaries the amounts were required to be paid by appellants or the survivor of them. In the event of the illness or disability of the beneficiaries or either of them appellants were required to care for them or the one requiring special care but during such period of illness or disability the monthly payments for the benefit of appellees were to cease. The monthly payments and the obligations for special care of the beneficiaries were made a perpetual lien on the real estate devised by testatrix to appellants. The intention of the testatrix in this regard is reasonably certain. She obviously provided a minimum support for her faithful friends and loyal companions for the life of each by monthly equal payments to them respectively and in the event of illness or disability the gift of each was the amount required to provide them suitable care. During any period of illness or disability the fixed monthly payments were discontinued. The gifts to each of the beneficiaries were assured by a lien on the real estate of the testatrix devised to appellants.

Appellants assert that the executor should be instructed to collect from Lebbie Blocker on account of death taxes $2,382.21 or that this amount be amortized over his life as a net deduction from the monthly sum of $100 of $21.25 so that he would receive only $78.75 monthly instead of $100 monthly; and that the executor should be instructed to collect from Ella Saul $2,650.37 on account of death taxes or that this amount be amortized over her life as a net deduction from the monthly sum of $100 of $22.77 so that she would receive $77.23 monthly instead of $100 monthly.

A provision of a will to pay legacies or bequests com-

mencing immediately or soon after the death of the testator has been determined as manifesting an intention of the testator that such a gift should be paid before estate taxes are or can be estimated and as indicating an intention that such a gift is exonerated from diminution by death taxes under the apportionment acts.

In re Reben's Will, 115 N. Y. S. 2d 228, contains the following: "Direction in fourth article of will that legacies referred to therein be paid within six months of date of testator's death, and direction in seventh article of will that residuary legacies were not to be paid until all legacies contained in fourth article had been paid in full, showed a clear intent on part of testator to exonerate legacies under fourth article of will from any estate tax burden."

In re James' Estate, *supra,* contains this language: "Each of the legacies in separate paragraphs for the benefit of her three secretaries and her housekeeper contains the significant direction that payment should be made to these legatees 'as soon as may be after my death.' Certainly there is no indication of purpose that payment should be deferred until the taxes were finally assessed after a period of two or three years or, more important, that these legacies should be burdened with any share of such taxes."

Annotation, 37 A. L. R. 2d 147, discusses this subject as follows: "There is ordinarily a delay of more than one year before the debts and charges against the estate can be determined so that the estate taxes can be calculated. Therefore a direction to pay certain legacies as soon as possible or within six months after the testator's death manifests an intention that such gifts should be paid before the estate taxes are determined and tends to indicate an intention that they be exonerated from the burden imposed under the apportionment statute."

In 28 Am. Jur., Inheritance, Estate, and Gift Taxes, § 529, p. 374, the author states: "On the other hand,

in particular circumstances the following provisions have been held to shift the burden of death taxes: a direction for equality among children, a provision for payment of a 'net' amount, provision for a legacy payable out of 'my total estate available for distribution,' and a direction to pay legacies as soon as possible or within 6 months after the testator's death—this being a time shorter than that normally required to determine the debts and charges against the estate."

The terms of the will of the testatrix evidence her intention that the gifts therein made to Ella Saul and Lebbie Blocker should not be diminished to any extent by the payment of any part of the inheritance or federal estate taxes.

The judgment should be and it is hereby affirmed.

AFFIRMED.