ELEANOR NAFFZIGER ET AL., APPELLANTS, V. MARGARET COOK ET AL., APPELLEES.

137 N. W. 2d 804

Filed November 5, 1965. No. 36099.

Wright, Simmons & Hancock, for appellants.

Lester A. Danielson, for appellee Margaret Cook.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

In this action between a widow and her stepdaughters we review a declaratory judgment construing the will of Harold J. Cook, deceased, and specifying estate assets ultimately liable for death taxes and a mortgage debt.

Cook willed to his wife a life estate in the Agate Springs Ranch, to his four daughters by a previous marriage all real property "subject * * * to the life estate," and to his wife all other property. He emphasized the life estate of the wife and attached certain conditions in this language:

"I * * * devise * * * to my beloved wife, Margaret, * * * (the Agate Springs Ranch) to have and to hold the same, during the term of her natural life:   Provided, however, she shall keep the buildings insured to the full insurable value thereof, and the improvements and irrigation system in good repair and from the operation thereof and revenues therefrom keep up and pay all encumbrances thereon as they mature, and all taxes and insurance premiums and other expenses of operation: Provided further that the encumbrances shall continue under the amortization plan as provided in the case of Federal Land Bank loans." (Underscoring by Cook.)

In the residuary paragraph, under which the widow receives the personal property, Cook also provided:   "I * * * direct that all my just debts * * * and expenses of administration shall first be paid from such residue." His widow is executrix without power of sale.

The district court decided that the federal estate tax was payable out of the corpus of the ranch and that those installments of the mortgage debt which mature in the lifetime of the widow were payable by her out of income from operation of the ranch. The judgment fixed no liability for subsequent installments. Three daughters, who were plaintiffs in the district court, argue

that property given to the widow must be used to pay the tax and any debt installments unmatured at the termination of the life estate.

The facts are stipulated. The following assets and deductions are described in an unaudited federal estate tax return:

Estate Assets

| | | |
|---|---|---|
| Ranch | $187,000.50 | |
| Other Real Estate | 310.00 | |
| Livestock | 69,730.00 | |
| Other Personal Property | 17,704.75 | |
| Property in joint tenancy with wife | 8,162.86 | |
| Total gross estate | | $282,908.11 |

Deductions

| | | |
|---|---|---|
| Mortgage on Ranch | 20,986.72 | |
| Other debts and funeral and administration expenses | 28,274.35 | |
| Marital deduction | 66,808.72 | |
| Total deductions | | $116,069.79 |
| Exemption | | $ 60,000.00 |
| Taxable Estate | | $106,838.32 |
| Net estate tax payable | | $ 22,454.99 |

No federal estate tax is due on account of any estate assets except the ranch. If the obligations in question are payable out of the residue, the corresponding decrease in the marital deduction will increase the tax.

At any given time between October 24, 1949, the date of the will, and Cook's death the ranch was encumbered with one, but only one, mortgage which ran to the Federal Land Bank. The present mortgage note for $23,800, which was given by Cook and his wife on February 27, 1953, was payable in 35 annual equal installments. Under the amortization plan referred to in the will, each installment included both principal and interest so that performance in accordance with the loan agreement would discharge the debt on January 1, 1988.

The Agate Springs Ranch was settled by Cook's ma-

ternal grandfather. Since its acquisition in 1887 by the testator's father, Captain James H. Cook, it has been the family home. The ranch is known nationally as a site of Indian conferences and Indian lore, but it is best known for its unique fossil quarries and geological formations. Exhibits from the quarries may be seen in major museums throughout the world. The ranch stimulated Harold Cook to earn a doctorate in paleontology and geology. In these pursuits, which kept him on the ranch much of the time, he wrote a number of scholarly papers and won international distinction.

Estate taxes are apportioned equitably in accordance with statutory rules unless a testator has directed otherwise in his will. See § 77-2108, R. R. S. 1943. An effective direction must be at least clearly inferable. See, In re Estate of Armstrong, 56 Cal. 2d 796, 366 P. 2d 490; Morgan Guaranty Trust Co. v. Huntington, 149 Conn. 331, 179 A. 2d 604; In re Estate of Pepper, 307 N. Y. 242, 120 N. E. 2d 807; In re Estate of Hoffman, 399 Pa. 96, 160 A. 2d 237.

The main theme of the protest against proration of the tax is Cook's desire to perpetuate the entire ranch in the family. The daughters have assembled a variety of arguments in support. The widow is not the primary object of bounty. In requiring her to pay matured installments of principal out of ranch income, Cook imposed a burden which the ordinary life tenant is free of. He conferred no power of sale upon the executrix. He required debts and expenses to be paid out of the residue, and the tax must be at least one of the two. It also falls within the words "all encumbrances" and "all taxes," which condition the life tenancy. The historical and scientific importance of the ranch to Cook colors the will in favor of the daughters. So the arguments run.

We conclude that Cook failed to direct effectively the ultimate impact of the tax, but we do so with some difficulty in the face of these arguments the other way. On

the whole the meaning of the will, even with the coloring from extrinsic evidence, is too doubtful. We see no preference for beneficiaries like those in Stuckey v. Rosenberg, 169 Neb. 557, 100 N. W. 2d 526, where paragraph after paragraph of will and codicil together revealed anxiety over welfare of the favorites and the court thought it self-evident that the testatrix had intended no diminution of their gifts. If Cook favored his daughters, it is clear that he set the limit in language inexpressive of a purpose to protect them from the tax. Likewise, if he intended to preserve the ranch in the family, he stated his desire ambiguously; for he stopped far from the boundary of permissible restraints on alienation.

Other arguments are less troublesome. The testamentary provision for payment of debts and administration expenses out of the residue describes expenditures ordinarily made in administration of an estate. The usage is common, and it excludes this tax. See Jerome v. Jerome, 139 Conn. 285, 93 A. 2d 139. The location of the words "all taxes" and "all encumbrances" in the devise of the life estate creates a substantial uncertainty that Cook had death taxes in mind. Amplification would add little.

The silence of the judgment with respect to liability of the ranch or the residue for debt installments maturing after termination of the life estate is unexplained, and a further declaration should be made. A testator may designate in his will the source for payment of debts, and in interpretation of it the court will give full effect to his true intention so far as it can be collected from the whole instrument if the interpretation is consistent with a permissible appropriation of assets for that purpose. See, § 30-230, R. R. S. 1943; Bray v. Sedlak, 168 Neb. 633, 97 N. W. 2d 225.

The will contains two signs that Cook intended to charge the residue and to exonerate the ranch. First, of course, the obligation is a "debt," as that word is used

in the residuary paragraph, unless Cook elsewhere restricted its meaning. The sense is unaffected by failure of the creditor to file a claim in the estate proceeding. See Lienhart v. Conway, 146 Neb. 821, 21 N. W. 2d 749. Second, the devise to the daughters was specific. See, § 30-232, R. R. S. 1943; Bray v. Sedlak, *supra*.

On the other hand there is one sign of a charge on the ranch. Cook stated that "the encumbrances shall continue under the amortization plan as provided in the case of Federal Land Bank loans." Consistent with an intention to exonerate the remainder interest in the ranch, Cook could have been concerned with the tax impact or with insufficiency of the residue to discharge the entire debt — about $22,000 in 1949 — along with other estate obligations. The possibilities are remote. If we should restrict the meaning to a prohibition against prepayment of installments, the detailed requirement for use of income during the life tenancy would lose significance. With the restriction a distinction between ranch income and residuary property would lack practical difference. We think that the quotation refers to payers as well as to time. This sign overrides the others, and the daughters' interest in the land should be charged.

The judgment should be modified by addition of a declaration that as between widow and daughters, the remainder interest in the ranch devised to the daughters, and not the residuary property, is liable for installments of the mortgage debt maturing after termination of the life estate, and the judgment is affirmed as so modified with costs on appeal taxed against plaintiffs.

AFFIRMED AS MODIFIED.