**FIRST NATIONAL BANK OF OMAHA
et al., Plaintiffs,**

v.

**The UNITED STATES of America,
Defendant.**

Civ. No. 03299.

United States District Court,
D. Nebraska.

March 14, 1972.

Tyler B. Gaines, Omaha, Neb., for plaintiffs.

Michael C. Durney, Washington, D. C., for defendant.

DENNEY, District Judge.

This matter comes before the Court on cross-motions of the parties for partial summary judgment on the following stipulated facts and issues of law.

The decedent, Martha H. Hitchcock, died testate on December 15, 1962. Plaintiffs, as co-executors of the estate, timely filed a federal estate tax return with respect to decedent on March 16, 1964, and paid the estate tax shown to be due on the return in the amount of $9,469,302.00. On audit of that return, the Commissioner of Internal Revenue assessed an estate tax deficiency against plaintiffs in the amount of $992,234.10, less an allowable additional credit for state death taxes in the amount of $206,178.40. On April 13, 1967, the assessment was paid by plaintiffs, together with assessed interest thereon of $143,557.46.

On March 13, 1967, plaintiffs timely filed a claim for refund with the Internal Revenue Service for estate taxes paid in the amount of $242,986.82. On June 6, 1968, plaintiffs timely filed a supplemental claim for refund of estate taxes paid in the amount of $786,055.70 and the $143,557.46 in interest. Plain-

tiffs' claims for refund were disallowed by the Internal Revenue Service and, therefore, the instant suit was filed on May 23, 1969. This Court has jurisdiction over the subject matter of this suit by virtue of 28 U.S.C.A. § 1346(a)(1).

The basis for the deficiency in the return of March 16, 1964, was that the Internal Revenue Service determined that the residue of the decedent's estate remaining after the satisfaction of the general and specific bequests and devises of the decedent, debts, and expenses of administration was not sufficient to pay the federal estate tax and the state death taxes. As originally computed by the Internal Revenue Service, the residue of the decedent's estate (after allowing for the bequests, legacies, debts and expenses) before the payment of the federal estate tax and state death taxes, was $10,324,413.53. The federal estate tax and state death taxes totalled $12,707,117.09. The Commissioner determined that the excess taxes due would be pro-rata apportioned among all the general and specific bequests of the decedent. Normally, such a pro-rata allocation procedure would not result in an overall increase in the amount of tax due; the bequests and devises would simply abate to provide funds to pay the tax due. But, because here decedent had made general and specific bequests to charities, with the Commissioner allocating part of the tax burden to those bequests, the amount going to charities was reduced, the amount of the deduction allowed to the gross estate for gifts to charities was reduced, thereby increasing the value of the net taxable estate, and resulting in an overall increase in the amount of tax which was the deficiency assessed. Other than the propriety of the Commissioner's allocation procedure, there are issues herein involved concerning valuation of the estate assets but these are not presently before the Court. The parties have a settlement proposal pending on those issues not before the Court which will result, if accepted, in a reduction of the figures regarding the deficiency. Therefore,

the Court's final decision will not be phrased in terms of dollar amounts but restricted to the broad issues presented. The parties have stipulated that they will prepare a judgment which conforms to the Court's decision of the issues of law, based upon the figures actually settled upon.

The parties stipulate that the issues are:

1. Whether decedent's bequests to charity should be reduced by payment of federal estate tax and state death taxes.

2. Whether the testimony of Thomas R. Burke, offered by plaintiffs is admissible.

 The law to be applied in cases such as this has been held by the Supreme Court to be that of the state involved, the intent of Congress being that the federal government should have no interest in the ultimate impact of the tax on the beneficiaries of the estate. Riggs v. Del Drago, 317 U.S. 95, 63 S. Ct. 109, 87 L.Ed. 106 [1942].

To understand how the problems in this case came to be requires an understanding of the development of the law in this area.

When an executor or administrator is required to pay an estate tax he generally resorts to the cash on hand and then sells personal property not specifically bequeathed in order to satisfy the tax, and so the burden of the tax initially falls upon the cash and personalty; but when the time comes to distribute the estate, the question arises as to whether the residuary estate is to be diminished by the amount paid as estate taxes or whether the taxes may be equitably apportioned against all the beneficiaries of the tax estate. In other words, does the ultimate burden of the taxes fall upon the residuary estate and the residuary legatees, or is it spread proportionately among all parts of the estate and its beneficiaries? 37 A.L.R.2d 170.

In the early days of estate taxation, the burden was light and only a few

cases presented questions of apportionment. . . .

In the absence of an apportionment statute . . . there is a considerable conflict of authority as to where the burden of an estate tax falls; and it is held in several states that the burden falls on the residuary estate, while in other states it is held that the doctrine of equitable contribution must be applied so that all persons whose gifts or benefits contribute to the tax must pay the share of the tax which is attributable to such gifts or benefits. 37 A.L.R.2d 202, 204.

Prior to the adoption of its apportionment statute, Nebraska followed the rule that all estate taxes were required to be paid by the residuary estate. In re Barrett's Estate, 169 Neb. 557, 100 N.W.2d 526 [1960].

The first statute concerning the apportionment of estate taxes was enacted in New York in 1930 and became § 124 of the Decedent Estate Law. This statute has been copied in full or in part in practically every other state apportionment statute. 37 A.L.R.2d 203.

Nebraska adopted Neb.Rev.Stat. § 77–2108 [Reissued 1966], an apportionment statute virtually identical to the New York statute, in 1949. The Nebraska apportionment statute is applicable to the state and federal estate taxes and provides that the burden of the taxes shall be equitably apportioned and prorated among the persons interested in the estate based on the value of the interest or benefit each person receives. The statute further provides that in the apportionment "allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions, including any marital deduction, allowed by such act for the purpose of arriving at the value of the net estate."

The Nebraska inheritance tax, by the nature of the assessment, is paid by the legatees and devisees in the first instance and thus the result that the apportionment statute contemplates for estate taxes is reached directly by the method of inheritance taxing. Neb.Rev.Stat. § 77–2003 [Reissued 1966]. The inheritance tax is not imposed upon any charitable legacy or devise. Neb.Rev.Stat. § 77–2007.04 [Reissued 1966].

Under Nebraska law, the testator in his will may relieve the burden of estate or inheritance taxes by directing that they should be paid out of any portion of his estate he may designate. In re Barrett's Estate, *supra.* However, "[a]n effective direction must be at least clearly inferable." Naffziger v. Cook, 179 Neb. 264, 137 N.W.2d 804 [1965].

Herein, the question is first did the decedent make an effective direction that the inheritance and estate taxes be paid out of a particular portion of the estate and, if so, what was that direction.

In "ITEM II" of the will, the decedent provided that:

I further direct that all estate, inheritance, transfer and succession taxes lawfully levied against my estate and the shares of the beneficiaries therein shall be paid by my executors from the body of my estate and not deducted from the devises or legacies.

In "ITEM XIV" of the will, decedent provided that "the income from my estate may be accumulated, if necessary, for any reasonable period not to exceed two (2) years in order to assist in providing funds for payment of taxes."

Reading these two provisions of the will together, it seems clear that the decedent intended to avoid the effect of the apportionment statute and inheritance tax provisions in that the taxes should not be deducted from the devises or legacies. The plaintiffs argue that the intent of the testator has been effected in that by accumulating the income as provided in "ITEM XIV", all the taxes have been paid and the devises and legacies have been paid in full, making the question at best academic. Defendant contends that in computing the allowances for deductions to the estate,

and, in particular here, the charitable deduction, what is important is the value of decedent's estate on her death. The amount of the charitable deduction is based upon the amount that could go to the charities out of the property owned by the decedent at her death and would not include an amount of a charitable bequest satisfied out of other funds such as, here, income earned by the decedent's estate after her death.

The Court finds that defendant is correct in this contention. In computing the amount of the charitable deduction, the post-mortem income may not be used to increase a deduction beyond what the decedent would have based on the value of her gross estate at her death. Alston v. United States, 349 F.2d 87 [5th Cir. 1965].

The parties have focused on what the decedent meant by the use of the word "body" in the phrase "from the body of my estate and not deducted from the devises or legacies", appearing in the direction contained in "ITEM II." The Court is not persuaded that a definite construction of the term "body" in this context is needed and, therefore, is not required to rule upon the admissibility of Mr. Burke's testimony regarding the circumstances surrounding the execution of the will. Taking the entire phrase into account, the broadest possible definition of "body" must be all of the estate except the devises and legacies, since those are the items that the "body of the estate" direction is to protect. Because, as shown above, all of the estate except the devises and legacies is not sufficient to pay the tax burden, then, whatever the decedent intended that direction to be, it has failed to satisfy the obligation at least insofar as the calculation of the estate tax is concerned. It may be that the testator intended to include in "the body of the estate" the post-mortem income, but as discussed that can have no effect on the calculation in question. Where the will directs that the taxes are to be paid out of a particular fund and the fund is insufficient to do so, the ordinary result is that the direction must fail. 37 A.L.R. 2d 127.

The Nebraska apportionment statute provides therein that it is applicable "except as otherwise directed in the decedent's will." Here, the direction in the will having failed, the Court must look to the apportionment statute to see how the tax burden is to be distributed.

Neither the parties nor the Court is aware of a Nebraska case passing directly on the question of whether on these facts the legacies and devises to charities must pro rate abate with all the other legacies and devises. However, in other states that have similar apportionment statutes to Nebraska, the law is quite clear that no abatement is required. A good explanation for this result is found in In re Estate of King, 52 Misc.2d 1021, 277 N.Y.S.2d 281 [Sur. 1967], wherein the Court said:

> Equity requires the appointive property now distributable to the charities to be delivered to them free of taxes . . . . The gifts to charity, therefore, not only do not generate any estate taxes but in fact benefit other recipients of the appointive property by lowering the total of the taxable estate. In Matter of Shubert's Will, 10 N.Y.2d 461, at page 473, 225 N.Y.S.2d 13, at page 21, 180 N.E.2d 410, at page 416, the court quoted with approval the following language from Matter of Wahr's Estate, 370 Pa. 382, 387, 88 A.2d 417: "As none of the gifts to charities contributed to the federal tax burden, it is just and equitable that such charitable gifts should be relieved from payment of any part of such tax." This finding is in accord with the expressed Federal and State legislative intent to encourage gifts to charity. [citations omitted]

A collection of other cases in other states to this effect can be found in 37 A.L.R.2d 218.

It is the conclusion of this Court for the reasons cited that the defendant was incorrect in assessing an estate deficiency based upon an abate-

**236**

ment of the charitable gifts. Precisely on the stipulated issue of the parties, the Court finds that the decedent's bequests to charity should not be reduced by payment of federal estate and state death taxes. This case should be distinguished from those cases where the charity takes as a residuary legatee, for there the law is settled that the amount of the charitable gift is reduced by the payment of taxes, the rationale being that, by definition, no residuary exists until all the debts, taxes, general and specific legacies have been paid. *See e. g.*, Rogan v. Taylor, 136 F.2d 598 [9th Cir. 1943].

An order granting partial summary judgment in favor of the plaintiffs will be entered contemporaneously with this Memorandum.