Almost a full gallon of wine was found in appellant's car.

Appellant, testifying as a witness in his own behalf, denied that he was drunk or under the influence of intoxicating liquor at the time. He said that the wine found in the car belonged to another person, and that he (appellant) had not drunk any of it. He admitted that, several hours before the arrest, he drank one bottle of beer.

The disputed issue of fact thus presented was for the jury; it was within their province to accept the testimony of the policeman. The facts are, therefore, sufficient to support the conviction.

The sole complaint here presented is to the trial court's failure to give appellant's special requested charge, the effect of which was that the jury be instructed that, if they entertained a reasonable doubt as to whether the appellant was drunk or under the influence of intoxicating liquor at the time, they should acquit him, even though they might believe that he had been drinking.

We perceive no legal distinction between such a charge and that given by the trial court, wherein the jury were instructed that, if they entertained a reasonable doubt as to whether the appellant was drunk or under the influence of intoxicating liquor, at the time, they should acquit him.

The judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

WOLF et al. v. HARTMANGRUBER et al.

No. 14379.

Court of Civil Appeals of Texas. Fort Worth.

May 1, 1942.

Rehearing Denied May 29, 1942.

John Davenport, of Wichita Falls, for appellants.

C. P. Engelking, of Electra, for appellees.

McDONALD, Chief Justice.

This suit is brought to obtain a construction of a will, and to effect a partition of the estate of the testator. All interested parties appear to have been properly brought before the court, and all seek a sale of the property and a division of the proceeds, it being conceded that it is impractical to divide the property in kind.

Prior to 1890, John J. Wolf resided on a farm in McLennan County, Texas. He

was married, and had ten children. In 1892 his first wife died. In 1893 or 1894 he married again, and by his second marriage had fourteen children. His first wife was Barba D. Wolf, his second wife was Maggie Wolf. It is undisputed that the farm in McLennan County was the community property of the first marriage at the time of the first wife's death.

In 1900 John J. Wolf executed a will, reading as follows:

"The State of Texas

"McLennan County

"In the Name of God, Amen:

"I, John J. Wolf, being of sound mind and memory in view of the uncertainty of life do make, publish and declare this my last will and testament, hereby revoking any and all other wills heretofore made.

"Item 1: I give and bequeath my wife my farm on which I now reside during her life, if she shall remain unmarried, with remainder to my children as hereinafter provided.

"Item 2: My said farm is community property between my first wife, Barba D. Wolf, now deceased, and myself, and from her our ten children inherited her one half. It is my desire, and I so direct that my executors, hereinafter named, shall pay to each of my children by my first wife, as they shall severally become of age, the sum of $200.00 in full settlement of their interest in their deceased mother's estate taking from each a conveyance to his interest. If they refuse this, then they shall be left to their remedy at law.

"Item 3: I constitute and appoint my friends, John Schroeder and Wm. J. Schroeder, the executors of this my last will and testament without bond, and independent of the action of the County Court except to have my will probated, and return an inventory and appraisement of my estate.

"Item 4: I direct that my estate shall be kept together and that my wife shall occupy my homestead with my minor children, who shall be maintained, educated and provided for during their minority if they remain on said premises; and I hereby appoint my said executors the guardians of my minor children without bond or responsibility to any Court.

"Item 5: I give and bequeath to my wife, Maggie Wolf, all my cows, horses, farming utensils and forage on hand at the time of my death, and direct that out of any money that may be on hand, at the time of my death, she shall have a sufficient sum to defray family expenses for one year, and after paying all my just debts, the balance together with all securities I may have shall be used in buying and paying for the interest of my first set of children in their deceased mother's estate, if any of said interests are outstanding. If all have been paid for, then my executors shall invest or loan any balance remaining for the benefit of my estate.

"Item 6: If, at the death of my wife, Maggie, any of my children are still minors, I direct that they shall still occupy my homestead, and be provided for out of the rents and means arising from my estate to the exclusion of my children, who have attained their majority, and such minors as may elect to leave home, and make their residence elsewhere.

"Item 7: At my wife's death and when all my children shall have attained their majority or shall have abandoned their homestead, I direct that all my property shall be equally divided among all of my children, share and share alike, taking into consideration any advances I may have made to any of them, with the following exceptions: My son, Jno. J. Wolf, shall receive one dollar, and no more, and the children of my second wife shall receive in the aggregate $103.00 less than my first children, unless their Grandfather, William Ahlback, shall pay to me in my life time, or to my executors after my death, the sum of $103.00 which he is due me. And my son Geo. J. Wolf, shall receive One dollar, and no more, I having advanced him the sum of $200.00, his full interest in my estate.

"Item 8: I expressly direct that if my wife shall survive me, and shall marry again, then if she elects to remain on my homestead, that as soon as my children shall become of age, or marry, or if they shall abandon said homestead my said executors shall sell my said homestead and all my other property that may remain, and divide the proceeds equally amongst my said children who are entitled to receive under this will, taking into consideration any advancements that may have been made to any of said children, but if my said wife shall survive me, and shall marry and abandon my homestead, the same shall not be sold so long as any of my minor children shall remain thereon.

"In testimony whereof, I have this the 1st day of June, 1900, signed my name to this, my last will and testament, in presence of O. S. Tillman and D. F. Goddard, who at my request, and in my presence, and in the presence of each other, signed the same as witnesses.

"John J. Wolf.

"Witnesses:

"O. S. Tillman.

"D. F Goddard."

The testator executed two codicils in 1906, which do not pertain to the controversies presented upon this appeal, and which need not be copied here.

Shortly before December of 1907, Wolf sold the McLennan County farm, and moved to Wichita County, Texas.

The parties stipulated as follows: "It is agreed that each of the children of the first marriage received $200.00 and made deeds back to their father for their mother's interest."

It is not clear from the evidence whether the children of the first marriage were paid this $200 each before or after the sale of the McLennan County farm.

In December of 1907 Wolf purchased the farm in Wichita County for the sum of $7,840, paying $2,000 in cash, and executing vendor's lien notes for the remainder. Wolf and his family, or at least the minor children, lived on the Wichita County farm until his death in 1917. Wolf's will was probated in Wichita County in 1917. His second wife, Maggie Wolf, continued to live on the Wichita County farm, with the younger children, until her death in 1935. Neither wife left a will.

The present suit concerns the proper division to be made of the Wichita County farm and certain personal property.

As we construe the judgment of the trial court, it adjudges that five thirty-ninths of the Wichita County land, and five thirty-ninths of the personal property, other than that left outright to the second wife by the will, is separate property of the testator, and that thirty-four thirty-ninths is the community property of the second marriage. It adjudges the provisions of the will relating to the McLennan County homestead to be inoperative by reason of the sale of the land before the death of the testator. It adjudges that the will disposes only of the testator's interest in the Wichita County land and the personal property, and

that it does not attempt to dispose of the community interest of the second wife, that by reason thereof the second wife was not put to an election to claim under the will or under the laws relating to community property, and that, therefore, her children were entitled to her half of the community estate under the laws of descent and distribution, and that all of the children by both marriages, except those excluded by the will, were entitled to share, equally, the separate property of the father, and his community interest in the community estate of the second marriage.

Both plaintiffs and defendants complain of the judgment, assigning error as we shall note.

The children of the first marriage were the plaintiffs below, and are the appellants here. The rely upon four points for reversal.

Appellants' first and third points urge that the trial court erred in holding that all but five thirty-ninths interest in the Wichita County farm was community property of the second marriage. Appellees, the children by the second marriage, urge that the trial court erred in holding that five thirty-ninths interest in the Wichita County land was separate property of the testator.

Both sides agree that $2,000 in cash was paid on the purchase price of the Wichita County farm. We are unable to find any evidence in the record showing where the $2,000 came from, that is to say, whether it was from separate funds of John J. Wolf, or from community funds of himself and the second wife. He and his second wife had been married about fourteen years when the Wichita County land was acquired. At some time after the death of the first wife, Wolf bought from the children of the first marriage their interest in their mother's estate. Whether this was done with Wolf's separate funds, or with community funds of himself and the second wife, is not shown. The evidence fails to show how much money was received from the sale of the McLennan County land, and fails to show whether that land was sold for cash or upon deferred payments.

Article 4619, R.C.S., as amended Vernon's Ann.Civ.St. Art. 4619, provides in part as follows: " * * * and all the effects which the husband and wife possess at the time the marriage may be dissolved

shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

■ It has repeatedly been held that property found in the possession of either the husband or wife at the time the marriage is dissolved is presumed to be community estate until the contrary is shown, and that the burden is upon the party seeking to establish that the property is the separate estate of one of the spouses. See statement of the rule, and authorities cited, in 23 Tex.Jur. 355–358.

■ We hold that there is no evidence to show that any of the property sought to be divided in this suit, or any interest therein, is the separate property of the testator, and that the trial court should have adjudged all of it to be the community property of the second marriage.

■ Appellants' second point urges that the trial court erred in adjudging that the will was inoperative as to the Wichita County land. We do not consider that the trial court so held. The holding of the trial court, as we interpret it, is that the will did not attempt to dispose of the entire community property of the second marriage, but only of such estate as the testator had therein. It cannot reasonably be considered that the Wichita County land can be substituted for the McLennan County land, in the disposition of property made by the will. The testator did not acquire the Wichita County land for several years after he made his will, and there is nothing in the will to indicate any purpose on his part to dispose of any land, by items 1 and 2, except the McLennan County farm on which he then resided. See Verhalen v. Klein, Tex.Civ.App., 268 S.W. 975; Edds v. Edds, Tex.Civ.App., 282 S.W. 638, writ of error refused. The last case cited is particularly in point upon the questions now before us. Item 7 of the will is sufficient, as a residuary clause, to dispose of the testator's interest in the Wichita County land.

■■ Appellants, in their fourth point, contend that the will put the second wife to an election, that she elected to take under the will by accepting the personal property and the year's allowance given her in the will, and that it must now be held that all of the property, and not merely the testator's interest therein, passes under the will. We cannot add to what has been said in such cases as Edds v. Edds, Tex.Civ. App., 282 S.W. 638, supra; Avery v. Johnson, 108 Tex. 294, 192 S.W. 542; and Whaley v. Quillin, Tex.Civ.App., 153 S.W. 2d 969, writ of error refused, on the rules applicable for determining whether the will is to be treated as a disposition of the entire estate, or only of the interest of the testator therein. Under the authorities cited, we hold that the will before us disposed of Wolf's community interest only in the community estate of himself and his second wife. She therefore was not put to an election; and her children inherit from her under the laws of descent and distribution one-half the community estate, and all of the children of both marriages take from their father under his will the other half of the community estate.

■ The possession by the second wife of the Wichita County land was rightful, as a co-tenant, in the absence of objection from the other co-tenants, and the evidence is undisputed that her possession was at least with the acquiescence of the other co-tenants.

Appellees' first and second cross points, or cross assignments, are in effect sustained by what has already been said.

■ Appellees' third cross point presents a complicated claim of right to interest upon a portion of certain money received as a bonus for an oil and gas lease given on part of the Wichita County land. Without attempting to review at length the theories presented in this respect, we hold that the proceeds of the oil lease should, for the purposes of this suit, be treated as we have treated the remainder of the property involved, and should be divided accordingly.

■ The judgment of the trial court is reversed, and the cause is remanded, with instructions to the trial court to render judgment in accordance with this opinion. Since the reversal of the judgment is based upon appellees' cross assignments, the costs of appeal are adjudged against the appellants.