## OAK HILLS PROPERTIES,
### Appellant/Appellee,

v.

## SAGA RESTAURANTS, INC.; CB Restaurants, Inc.; and Cafe Ranch, Inc., Appellees/Appellants.

### No. 04–95–00577–CV.

Court of Appeals of Texas, San Antonio.

Jan. 15, 1997.

Douglas Wayne Sanders, Reese L. Harrison, Jr., Raymond W. Battaglia, Oppenheimer, Blend, Harrison & Tate, Inc., San Antonio, for Appellant/Appellee.

Samuel H. Bayless, Matthew C. Bradley, Gresham, Davis, Gregory, Worthy & Moore, P.C., San Antonio, for Appellees/Appellants.

Before HARDBERGER, C.J., and RICKHOFF and JOHN HILL, JJ.[1]

## OPINION

JOHN HILL, Justice (Assigned).

Oak Hills Properties appeals from the trial court's failure in this declaratory judgment action to declare that the term "restaurant," as used in a parking easement in connection with a ground lease, means "a business that secures over 50% of its revenues from food services as opposed to all other services." Oak Hills contends in a single point of error that the trial court abused its discretion by failing to enter a declaratory judgment to that effect.

We affirm because the trial court did not err in failing to declare the specialized definition of "restaurant" requested by Oak Hills because nothing in the original easement indicates a specialized meaning of the term, and because the evidence supports a conclusion that Oak Hills did not intend to amend the easement when it later agreed to a sublease under its terms, but was mistaken as to its legal effect.

Oak Hills is the owner of certain commercial real estate in San Antonio. In connection with the operation of its commercial property, Oak Hills entered into an agreement with appellee, Saga Restaurants, Inc., including a parking easement that set forth the right of Saga's patrons to the use of certain parking facilities on the premises, provided that Saga's facilities were used for "restaurant and ancillary purposes." CB Restaurants, Inc. opened a business on the Oak Hills property, a business originally called the Rodeo Drive Country Cafe. The business closed, later reopening at the same location as the Piranha Room.

After one of Oak Hills' retail tenants complained of problems relating to the operation of the appellees' business, including parking problems, Oak Hills brought this declaratory judgment action. It sought to obtain a decla-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

ration that the definition of the term "restaurant" within its parking easement was "a business establishment which derives at least 51 percent of its gross revenues from the sale of food and non-alcoholic beverages; and which does not sell alcohol other than as an accompaniment to meals or to individuals generally awaiting tables for food service in an area of the structure that does not exceed 25% of the customer floor area;" that the Piranha Room was not operating as a restaurant; and that the Piranha Room was therefore not entitled to parking as authorized in the parking easement.

A jury found that the Piranha Room was currently not being used for restaurant and ancillary purposes. The court's instructions contained no definition of "restaurant."

Following the return of the jury's verdict, the trial court entered judgment declaring that Saga Restaurants, Inc., CB Restaurants, Inc., and Cafe Ranch, Inc. are not presently using what it termed the "restaurant tract" for restaurant and ancillary purposes and, therefore, have no present right to use the parking facilities described in the parking easement. The trial court declined to make a declaration as to the meaning of the term "restaurant" as requested by Oak Hills.

█ Declaratory judgments are reviewed under the same standards as other judgments or decrees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1986); *Truck Ins. Exchange v. Musick*, 902 S.W.2d 68, 69 (Tex.App.—Fort Worth 1995, writ denied). We must uphold the trial court's determination if it can be sustained upon any legal theory supported by the evidence. *Truck Ins. Exchange*, 902 S.W.2d at 69.

█ Oak Hills has not referred us to anything in the original parking easement that indicates that the parties intended to attach any special meaning to the words and phrases employed. Therefore, we will apply the general rule that the words and phrases used by the litigants in their agreement will be given their ordinary and commonly accepted meaning. *Mullins v. Elieson*, 611 S.W.2d 921, 925 (Tex.Civ.App.—Amarillo 1981, no writ).

█ The trial court apparently followed this general rule, since the court's charge did not include a definition for the term when the issue as to whether the appellees were operating a restaurant was submitted to the jury. Because the definition that the appellees sought to have declared was not the common meaning of the term "restaurant," we hold that the trial court did not err in failing to declare the appellees' definition to be the definition as used in the original parking easement.

█ Oak Hills argues that the trial court was required to declare the term "restaurant" to be defined as it requested because under the anti-discrimination portion of the City Code of the City of San Antonio the term "restaurant" was defined so as not to include places at which intoxicating beverages are served otherwise than as an accompaniment to meals, while its definition of "tavern" included any use in which the primary purpose is the sale of alcoholic beverages for on-premises consumption. Nowhere in the parking easement is there any indication that the parties intended to adopt the specialized definition of "restaurant" contained in the anti-discrimination portion of the San Antonio city code.

█ After Saga and Oak Hills had entered into the agreement concerning parking, as represented by the parking easement, Marriott Hotel Corporation acquired Saga. Subsequently, Marriott desired to sublease the property to CB and Cafe Ranch. Oak Hills agreed to the sublease on three conditions, all of which were in writing and were communicated to CB and Cafe Ranch. The second condition was to the effect that Oak Hills would not recognize the parking easement unless the property was used for the operation of a restaurant. The condition then continued, "Under our Texas Case Law, in order to qualify as a restaurant, a business must secure over 50% of its revenues from food service as opposed to all other revenues." In the sublease negotiations, no one ever agreed to or contested Oak Hills' definition of "restaurant." Oak Hills mentions this fact in its brief, but presents no legal theory by which its incorrect statement of law in its

letter would constitute an amendment to the parking easement.

The letter in question does not show any intention to amend the parking easement as it existed at that time. It merely shows that Oak Hills agreed to the sublease under the terms existing at the time and that it made that agreement based upon a mistake on its part as to Texas law on the subject, there being no Texas case law in support of Oak Hills' requested definition. A mistake of law does not relieve a party to a contract from being bound by its terms. *See Damstra v. Starr*, 585 S.W.2d 817, 820 (Tex.Civ. App.—Texarkana 1979, no writ). We overrule Oak Hills' sole point of error.

The judgment is affirmed.