Ricki Diann ROSEN, as Independent Executrix of the Estate of Daniel H. Rosen, Deceased, Appellant,

v.

WELLS FARGO BANK TEXAS, N.A., as Trustee of the Rachael Leigh Rosen Trust and the Dorian Rosen Trust, and as Guardian of the Estates of Rachael Leigh Rosen and Dorian Rosen; and Eileen Rosen as Custodian of Rachael Leigh Rosen, Appellees.

No. 03–01–00634–CV.

Court of Appeals of Texas, Austin.

July 30, 2003.

Alvin J. Golden, Ikard & Golden, PC, Pamela Stanton Baron, Austin, for Appellant.

Gary I. Currier, Garry Vacek, Mueller, Vacek & Kiecke, L.L.P., Austin, for Eileen Rosen.

James A. Vaught, Law Office of James A. Vaught, PC, Deborah Green, Green & McCullar, LLP, Austin, for Wells Fargo Bank.

Before Justices KIDD, YEAKEL and PATTERSON.

## *OPINION*

JAN P. PATTERSON, Justice.

The central issue in this will construction case is whether, when a testator directs that all transfer taxes be paid out of the residuary estate but the residue contains no assets, the default statutory apportionment provisions of section 322A of the probate code apply. Appellant Ricki Rosen is the widow of Daniel Rosen, independent executrix of his estate, and primary beneficiary of his will; she appeals by two issues. In her first issue, she contends that the probate court erred in allocating the tax burden to the probate assets. Under the apportionment statute, appellant argues, only the taxable assets, here specifically the non-probate life insurance proceeds passing to the children of Daniel Rosen's first marriage, incur the transfer taxes. In her second issue, she contends that the probate court erred in failing to apportion any interest and penalties on transfer taxes and failing to award the estate its costs and legal fees in pursuing this matter. For the reasons stated below, we affirm the probate court's order in part, reverse in part, render judgment that only the taxable assets of Rosen's estate bear the transfer tax burden, and remand this cause in part for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Although the parties disagree about the application of the law, the facts in this case are undisputed. Daniel Rosen died unexpectedly on June 14, 2000. At the time of his death, he was married to appellant, his second wife. He also had two children, Rachael and Dorian, from his first marriage to appellee Eileen Rosen that ended in 1996. Rosen died testate, and his will executed on May 28, 1997, was admitted to probate in the Travis County Probate Court. The total value of his gross estate was approximately $2.632 million.

Article III of the will left all of Rosen's personal property, as well as his interests in all employee benefit plans and retirement accounts, to appellant. Articles IV and V placed the remainder of the estate in two trusts: the marital trust and the family trust. Rosen provided that the income of the marital trust was to be used for the benefit of appellant during her lifetime. The income of the family trust was to be used for the benefit of both appellant and Rosen's descendants. The remainder of both trusts was to be distributed to his descendants, *per stirpes*. Article VIII contained administrative provisions, including a directive that all transfer taxes "shall be paid out of the residue of my estate without apportionment." However, no residue existed because all of the probate assets were disposed of through other provisions in the will.

Rosen also had substantial non-probate assets, the bulk of which were designated for the benefit of his children. These included a $963,000 life insurance policy, payable to appellee Wells Fargo Bank, as trustee for Rosen's children, and a $216,000 life insurance policy, payable to Wells Fargo as guardian of the children.[1] The non-probate assets also included $54,542 held in a Uniform Gift to Minors Act (UGMA) account for the benefit of Rachael Rosen. Because Rosen was custodian of the UGMA account, it was included in his estate for tax purposes. *See* 26 U.S.C.A. § 2036 (West 2002).

In June 2001, appellant filed an application for declaratory judgment, seeking a declaration that, because there was no residuary estate from which to pay the taxes, the taxes should be apportioned under section 322A of the probate code. Tex. Prob. Code Ann. § 322A (West 2003). Wells Fargo and Eileen Rosen opposed the declaratory judgment, asserting that the will specifically directed that the probate assets would bear the tax burden. It is undisputed that if the probate assets bear the transfer tax burden, the total taxes will be $224,447. If the non-probate assets bear the burden, the total taxes will be $132,442.

After an evidentiary hearing in July 2001, the probate court signed an order in October 2001, directing that all transfer taxes, expenses attributable to the determination of the taxes, plus any interest and penalties on the taxes, be paid solely from the probate assets. The court further ordered that each party pay its own attorney's fees and costs for pursuing the declaratory judgment action. It is from this order that appellant appeals.

## DISCUSSION

### *Standard of Review*

■ We review a declaratory judgment action under the same standards as

---

1. After his divorce, Rosen was initially required to maintain the larger policy. Pursuant to a subsequent agreement, he was only required to maintain the smaller policy, which was to cover child support obligations in the event of his death. However, Rosen voluntarily continued to maintain the larger policy.

other orders, judgments, and decrees. Tex. Civ. Prac. & Rem.Code Ann. § 37.010 (West 1997); *Black v. City of Killeen,* 78 S.W.3d 686, 691 (Tex.App.-Austin 2002, pet. denied). We must uphold the judgment of the trial court if it can be sustained on any legal theory supported by the evidence. *See Bell v. Katy Indep. Sch. Dist.,* 994 S.W.2d 862, 864 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Oak Hills Props. v. Saga Rests., Inc.,* 940 S.W.2d 243, 245 (Tex.App.-San Antonio 1997, no writ). We have a duty to render the judgment the trial court should have rendered. *See City of Galveston v. Giles,* 902 S.W.2d 167, 172 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 488–89 (Tex.App.-Houston [1st Dist.] 1993, writ denied). We may only render judgment when, as here, the material facts are undisputed. *See Mitchell v. Rancho Viejo, Inc.,* 736 S.W.2d 757, 762 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.) (citing *Donald v. Carr,* 407 S.W.2d 288, 291 (Tex. Civ.App.-Dallas 1966, no writ)).

### Will Construction

■ In addressing appellant's first issue, whether the default statutory apportionment provisions apply, we must first examine what Rosen intended in his will. Testamentary intent is the critical inquiry when construing a will. *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 639 (Tex.2000); *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960). In determining the testator's intent, we are limited to the language within the four corners of the will. *Lang,* 35 S.W.3d at 639; *Shriner's Hosp. for Crippled Children of Tex. v. Stahl,* 610 S.W.2d 147, 151 (Tex.1980). We focus not on what the testator intended to write, but the meaning of the words actually used. *Stahl,* 610 S.W.2d at 151; *Rekdahl v. Long,* 417 S.W.2d 387, 389 (Tex.1967). "An appellate court must give the words in a will their normal meaning, in light of the testator's intent." *Barker v. Rosenthal,* 875 S.W.2d 779, 781 (Tex.App.-Houston [1st Dist.] 1994, no writ). We should construe the will to give effect to every part of it, as long as the language is reasonably susceptible of that construction. *See Perfect Union Lodge No. 10, A.F. & A.M. v. Interfirst Bank of San Antonio, N.A.,* 748 S.W.2d 218, 220 (Tex.1988); *Republic Nat'l Bank of Dallas v. Fredericks,* 155 Tex. 79, 283 S.W.2d 39, 43 (1955). All rules of construction must yield to the testator's basic intent and purposes as reflected by the entire instrument. *Welch v. Straach,* 531 S.W.2d 319, 322 (Tex.1975). However, we will not redraft the will or add provisions under the guise of construction to effectuate some presumed intent of the testator. *See Perfect Union Lodge No. 10,* 748 S.W.2d at 220; *Stahl,* 610 S.W.2d at 151; *Huffman,* 339 S.W.2d at 888.

■ The overarching intent of Rosen's will was to pay as little in transfer taxes as possible. To fulfill this intent, his will employed two common methods to avoid taxation of his estate—the unified credit and the unlimited marital deduction. Article III of the will made specific gifts of probate assets to appellant. Article IV established a marital trust for the benefit of appellant, funded by assets entitled to the marital deduction. Under the Internal Revenue Code, property passing to a surviving spouse is entitled to an unlimited marital deduction, which is deducted from the value of the decedent's taxable estate. *See* 26 U.S.C.A. § 2056(a) (West 2002). The gift was "intended to entitle [the] estate to the maximum marital deduction ... and any provision in this Will which may conflict with or fail of this intention shall be disregarded, reconciled or amplified to accomplish this objective."

The amount of the marital trust was to be "reduced by an amount, if any, needed to increase my taxable estate as determined for Federal estate tax purposes to be the largest amount which ... will result in the least amount of Federal estate tax imposed on my estate." This clause ensured that assets would fund the unified credit, also deducted from the value of the taxable estate, before funding the marital trust. At the time of Rosen's death, the unified credit was $675,000. *See* 26 U.S.C.A. § 2010 (West 2000), *superseded by* 26 U.S.C.A. § 2010 (West 2001). The effect of Article IV was that all probate assets not otherwise devised in Article III would fund the marital trust, less the amount necessary to fund any unused portion of the unified credit. The amount of unused unified credit thus would become the residue of the estate.

 Article V placed all of the residue of the estate in the Daniel Hunt Rosen Family Trust, with appellant as primary beneficiary if she survived Rosen. Article VIII directed that transfer taxes be paid out of the residue, as follows:

*All estate, inheritance or similar taxes* ..., all funeral expenses and all expenses incurred with the administration of my estate *shall be paid out of the residue of my estate without apportionment;* provided, however, if my wife fails to survive me, to the extent the residue of my estate is insufficient for the payment of such taxes and expenses, then any excess, except as otherwise specifically provided in this Section, shall be paid on a pro rata basis from all

of the assets included in my gross estate.

(Emphasis added.) Because the combined taxable value of the non-probate assets exceeded the unified credit, there was no residue of the estate to fund the family trust or pay the transfer taxes. The dissent's reasoning rests on its finding that the marital trust contains the residue of the estate. "The residuary is what is left after all debts and legal charges have been paid and *other testamentary gifts* have been satisfied." *Stahl,* 610 S.W.2d at 152 (emphasis added). The dissent disregards Rosen's intent to create a marital trust by testamentary gift *separate* from the creation of the residue. The marital trust clause specifically designated that portion which, when read in conjunction with the family trust clause, would be the residue: the amount, "if any," needed to fulfill the unified credit. Because the non-probate assets satisfied the unified credit, there was no residue. The will contained no alternative provision for the payment of taxes if the residue were unfunded or insufficient to pay the taxes. Thus arose the parties' dispute about which assets would bear the burden of the taxes.

The dispute centers on whether section 322A of the probate code, the default apportionment statute, should apply when the will contains an ineffective directive for payment of taxes out of the residue of the estate. This is an issue of first impression in Texas.[2] The default apportionment provisions apply unless the will "specifically directs the manner of apportionment of estate tax or grants a discretionary power of apportionment to another person."

---

**2.** The only Texas case holding that probate code section 322A did not apply when a will contained a directive to pay all taxes from the residuary estate declined to decide whether the section would apply if the residuary estate were insufficient to pay the transfer taxes. *See Peterson v. Mayse,* 993 S.W.2d 217, 222 (Tex.App.-Tyler 1999, pet. denied). *See also Estate of Miller v. Commissioner,* 76 T.C.M. (CCH) 892 (1998) (holding that, when residuary estate funded, clause similar to that in instant case sufficient to override section 322A default apportionment provisions).

Tex. Prob.Code Ann. § 322A(b)(2).[3] Appellant argues that the lack of a residuary estate negates any specific direction for apportionment and therefore the default apportionment provisions of section 322A should apply. We agree. Because Rosen's only specific directive—payment of taxes out of the residuary estate—was ineffective, and because his will did not anticipate an alternative for payment of taxes if the residue were insufficient, we hold that the default apportionment provisions of section 322A apply. To hold otherwise would give effect to a provision in the will that failed of its purpose. *See Perfect Union Lodge No. 10,* 748 S.W.2d at 220; *Stahl,* 610 S.W.2d at 151; *Huffman,* 339 S.W.2d at 888.[4]

### Assets Subject to Payment of Transfer Taxes

 Now we must decide which estate assets bear the tax burden. Appellees argue that Rosen's "clear and unequivocal intent" was for taxes to be paid without apportionment out of the *probate* estate if no residuary estate existed. Appellees support their argument with the following clause from the will:

> Non-probate assets payable to my testamentary Trustee shall not be liable for or used to pay (but may be loaned for such purpose) any taxes, liabilities, debts or any other claims against my estate: provided, however, such assets may be used to pay estate, inheritance or similar taxes assessed with respect to such assets.

We disagree with appellees. This clause, when read in conjunction with the rest of Rosen's will, supports appellant's position because it directs that non-probate assets may be used to pay taxes that those assets incur. The will contains no provision, however, for payment of taxes out of the marital trust.

Section 322A provides that "the portion of each estate tax that is charged to each person interested in the estate must represent the same ratio as the *taxable* value of that person's interest." Tex. Prob.Code Ann. § 322A(b)(1). Here, under the directives of the will, the probate assets qualify for the unlimited marital deduction and therefore are not taxable. The non-probate assets that did not qualify for the unified credit are the only taxable assets and must therefore bear the burden of paying the taxes under section 322A(b)(1). Having the non-probate assets bear the tax burden results in less estate taxes, as the parties agree, in turn leaving more assets overall to pass to the beneficiaries. This comports with Rosen's overarching intent to have his estate pay as little transfer taxes as possible.

Having sustained appellant's first issue, we reverse the probate court's order that

3. One commentator suggests a directive to pay all taxes from the residuary estate is too general to be a specific directive that circumvents section 322A and that the *Peterson* and *Miller* holdings make it "clear that [section 322A] isn't working as intended." Johanson's Texas Probate Code Annotated 334 (West 2002).

4. In arriving at this holding, we note that the majority of states deciding this issue have held that the default apportionment statute applies if the residuary estate is insufficient to pay the taxes. *See In re Estate of Fogleman,* 197 Ariz. 252, 3 P.3d 1172, 1182 (App.2000,

rev.denied); *Estate of Cochran,* 30 Cal.App.3d 892, 897, 106 Cal.Rptr. 700 (Cal.Ct.App. 1973); *Naffziger v. Cook,* 179 Neb. 264, 137 N.W.2d 804, 806–07 (1965); *In re Estate of Thompson,* 118 N.H. 361, 386 A.2d 1280, 1282 (1978); *In re Estate of Kramer,* 78 Misc.2d 662, 356 N.Y.S.2d 984, 988 (N.Y.Sur. Ct.1974); *Barker v. Barker,* 65 Or.App. 635, 672 P.2d 370, 372–73 (App.1984, rev.denied); *but see Stickley v. Stickley,* 255 Va. 405, 497 S.E.2d 862, 864 (1998) (apportionment statute did not apply when will directed all debts and taxes to be treated same).

the probate estate bear the tax burden and render that portion of the declaratory judgment in favor of appellant, holding that only the non-probate assets of Rosen's estate bear the tax burden.

### Interest, Penalties, Attorney's Fees, and Other Expenses

In her second issue, appellant contends that the probate court erred in charging any interest and penalties on transfer taxes against the probate estate. She argues that the probate court further erred in failing to award the estate its costs and legal fees in pursuing this matter. Concerning interest on transfer taxes, section 322A(m) of the probate code provides:

> Interest on an extension of estate tax and interest and penalties on a deficiency shall be apportioned equitably to reflect the benefits and burdens of the extension or deficiency and of any tax deduction associated with the interest and penalties, but if the assessment or penalty is due to delay caused by the negligence of the representative, the representative shall be charged with the amount of assessed penalty and interest.

*Id.* § 322A(m). Section 322A(q) further provides for apportionment of the interest and penalties "unless, on application by any person interested in the estate, the court determines that the proposed apportionment is not equitable." *Id.* § 322A(q). Appellees made an application below that appellant bear the costs of interest and penalties because the transfer taxes were not timely paid, but it is unclear from the record whether the taxes have been paid. In light of our decision to apportion the taxes under section 322A, we reverse the probate court's order that the probate estate pay interest and penalties and remand this issue to the probate court for further determination in accordance with this opinion.

■ Concerning the payment of appellant's costs, the probate court ordered that each party bear its own attorney's fees, costs, and other expenses. Section 322A(r) of the probate code states:

> Expenses reasonably incurred by a representative in determination of the amount, apportionment, or collection of the estate shall be apportioned among and charged to persons interested in the estate in the manner provided by Subsection (b) of this section unless, on application by any person interested in the estate, the court determines that the proposed apportionment is not equitable.

*Id.* § 322A(r). Section 322A(y) provides that prevailing party in an action to collect estate taxes from a person "to whom estate taxes were apportioned and charged under Subsection (b) of this section shall be awarded necessary expenses, including reasonable attorney's fees." *Id.* § 322A(y). Appellees argued below that each party be responsible for its own costs and expenses, which the probate court ordered.

■ Normally, we review a court's decision of whether to award attorney's fees under an abuse of discretion standard. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Despite the mandatory nature of the word "shall" in the probate code provisions, section 322A(r) allows a court to take equitable considerations into account in apportioning fees and costs. Appellant also sought costs under section 37.009 of the civil practice and remedies code, under which a court has discretion to award attorney's fees in a declaratory judgment action. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). Construing these provisions together, we hold that it was within the probate court's discretion to award fees and costs. Because appellant presents no evidence on appeal that the probate court abused its discre-

tion, we affirm the probate court's order that each party bear its own costs and expenses.

## CONCLUSION

We hold that Rosen's directive that all transfer taxes be paid out of the residuary estate failed because the residue contained no assets, and therefore the default statutory apportionment provisions of section 322A of the probate code must apply. Tex. Prob.Code Ann. § 322A. We further hold that under section 322A(b)(1), only the taxable assets of the estate bear the burden of the transfer taxes. *Id.* § 322A(b)(1). Here, under the directives of the will, the probate assets qualify for the unlimited marital deduction and therefore are not taxable. The non-probate assets that did not qualify for the unified credit are the only taxable assets and must therefore bear the burden of paying the taxes under section 322A(b)(1). Accordingly, we reverse the probate court's order to the extent that it ordered the probate estate to bear the tax burden and render judgment that only the taxable assets of the non-probate estate bear the tax burden.

We affirm that part of the probate court's order directing each party to bear its own costs and expenses. Finally, we remand the issue of who bears the burden of paying any interest and penalties on the transfer taxes to the probate court for further determination in accordance with this opinion.

Dissenting opinion by Justice MACK KIDD.

MACK KIDD, Justice, dissenting.

The linchpin of the majority opinion is that Rosen's last will & testament ("the Will") as applied after Rosen's death was entirely devoid of a residuary estate from which to pay the estate taxes. To reach this conclusion, the majority must disregard the most basic tenets of Texas will-construction case law. Because I believe otherwise and would affirm the probate court's decision, I respectfully dissent.

## BACKGROUND

Under Rosen's will, executed on May 28, 1997, appellant was the primary beneficiary.[1] Article III of the Will left all of Rosen's personal property, as well as his interests in all employee benefit plans and retirement accounts, to appellant. Articles IV and V placed the remainder of the estate in two trusts: the Marital Trust and the Family Trust. Rosen provided that the income of both trusts was to be used for the benefit of appellant during her lifetime, with the remainder of both trusts to his descendants, *per stirpes*. I will refer to the gifts under Articles III, IV and V of the Will as the "probate assets." Article VIII set out the administrative provisions. The other provisions of Rosen's will are not at issue here.

Rosen had substantial non-probate assets,[2] some of which generated estate and

---

**1.** Under the Will, some probate assets pass to Rosen's descendants, *per stirpes*, upon the death of appellant or in the event that appellant does not survive Rosen, and assets from the Family Trust may be used to provide for "the health, support, maintenance and education" of the children.

**2.** As part of his divorce settlement, Rosen was initially required to maintain a $1 million life insurance policy. Pursuant to a subsequent agreement, the amount of life insurance Rosen was required to maintain was reduced to $216,000. Rosen obtained a second insurance policy in that amount. Although he was no longer required to do so, Rosen voluntarily maintained the first policy, in addition to the second policy.

inheritance taxes: (1) a $963,000 life insurance policy, payable to appellee Wells Fargo Bank ("Wells Fargo"), as trustee for Rosen's children;[3] and (2) a Uniform Gift to Minors Act account in the amount of $54,542 for the benefit of Rachael Rosen.[4] I will refer to these gifts as the "non-probate assets." The combined taxable value of $1,017,542 from these non-probate assets produced significant estate taxes established at trial in the amount of $132,442.

The parties dispute which assets are liable for the payment of estate taxes: probate or non-probate. Under Texas common law, estate taxes and other expenses were borne by the general estate. This meant that the beneficiaries of the general estate—typically a surviving spouse and children—bore all expenses, including taxes, even if non-probate transfers to beneficiaries other than the spouse or children produced such taxes. In place of this system, Texas adopted an equitable apportionment statute in 1987. *See* Tex. Prob.Code. Ann. § 322A (West 2003). This statute provides that beneficiaries of taxable assets, whether probate or non-probate, will bear a *pro rata* portion of all estate taxes charged against the estate. *Id.* § 322A(b)(1). This equitable apportionment statute will not apply, however, if a decedent "specifically directs the manner

of apportionment" in a will or similar instrument. *Id.* § 322A(b)(2). To this point, it has remained unclear what the effect of such a waiver would be if the fund from which the taxes are to be paid is insufficiently funded. *See Peterson v. Mayse,* 993 S.W.2d 217, 222 (Tex.App.-Tyler 1999, no pet.).

For most decedents, the equitable apportionment method as provided in 322A(b)(1) is suitable. However, some testators include alternative provisions for the payment of estate taxes. While such provisions can direct that taxes be paid out of specific assets, a commonly used provision is that all taxes should be paid "out of the residuary estate without apportionment."

Article VIII of Rosen's Will reads:

B. All estate, inheritance or similar taxes arising in connection with my death with respect to any property included in my gross estate for the purpose of calculating such taxes, whether or not such property passes under my Will, all funeral expenses and all expenses incurred in connection with the administration of my estate *shall be paid out of the residue of my estate without apportionment;* provided, however, if my wife fails to survive me, to the extent the residue of my estate is insufficient for the payment of such

3. Because Rosen maintained an "incidence of ownership" in the first insurance policy, it was included in his estate for tax purposes. Although the record is unclear as to the nature of the incidence, it may have been a power of appointment. This would constitute a prohibited power under the Internal Revenue Code, rendering the insurance policy part of Rosen's gross estate for tax purposes. Such indicia of ownership make an insurance policy part of the taxable probate estate, subject to taxation. *See* 26 U.S.C.A. § 2036(a)(2) (West 2002). In addition, the parties agree that, because the second policy should be treated as a debt of the estate, it does not produce any taxes and is not at issue here.

However, if the Internal Revenue Service were to view this policy as a transfer and not a debt, the parties agree that this policy would also generate transfer taxes.

4. Because Rosen was a custodian of this Uniform Gift to Minors Act account, *see* Tex. Prop.Code Ann. §§ 141.001–.025 (West 1995 & Supp.2003), it was included as part of his estate for tax purposes. There is also a Uniform Gift to Minors Act account for the benefit of Dorian Rosen, but because Rosen was not the custodian of this account, it is not included in his estate for tax purposes.

taxes and expenses, then any excess, except as otherwise specifically provided in this Section, shall be paid on a pro rate basis from all of the assets included in my gross estate.

(Emphasis added). It is apparent from this provision of the Will that Rosen has provided for the payment of estate taxes under two different circumstances. If his wife survives him, the estate taxes are to be paid out of the "residue of [his] estate *without apportionment.*" (Emphasis added). On the other hand, if he survives his wife, and the residue of his estate should be insufficient, Rosen provides for a *pro rata* method of apportionment similar to section 322A of the Texas Probate Code. Thus, it is obvious that Rosen contemplated two different methods of apportioning estate taxes.

### Rosen's Last Will and Testament

Both federal and state law provide certain tax credits that, if used properly, can minimize or entirely eliminate estate and inheritance taxes. The "marital deduction" is a common method for transferring assets to a surviving spouse without generating any tax liability. It consists of a portion of the estate which is allowed to pass tax free to the surviving spouse. For over twenty years, the tax code has permitted a married decedent to grant *any* property to the surviving spouse, *unlimited in amount,* which remains tax free at least until the surviving spouse's death. *See* 26 U.S.C.A. § 2056(a) (West 2002).

Every individual is also entitled to a "unified credit" that allows the transfer of a fixed number of assets free of transfer taxes. This credit belongs to the estate. At the time of Rosen's death, the unified credit permitted tax-free transfers of up to $675,000. *See* 26 U.S.C.A. § 2010 (West 2000), *superseded by* 26 U.S.C.A. § 2010 (West 2001). All assets that do not fall under the marital deduction or the unified credit and that are not otherwise exempt may be taxed.

In order to avoid taxation of the assets in the marital deduction upon the death of the surviving spouse, it is common to divide the estate into separate parts: (1) a life estate in the assets subject to the marital deduction to the surviving spouse;[5] and (2) a "bypass trust"—in the amount of the unified credit not already used by other transfers—for the benefit of the surviving spouse during his or her lifetime, with the remainder passing to the children. Upon the death of the surviving spouse, the assets of the bypass trust transfer to any children or other natural heirs free of taxes.

Article III, entitled "Specific Gifts," made specific bequests[6] of Rosen's personal property, as well as his interests in all employee benefit plans and retirement accounts, to the appellant, Ricki Rosen.

Article IV of Rosen's Will established the Daniel Hunt Rosen Marital Trust (the "Marital Trust"):

A. If my wife survives me, I give to my Trustee, IN TRUST, to be administered as provided in this Article, such an amount of property (including any non-probate assets payable to my testamentary Trustee) as will

---

**5.** A life estate for the benefit of the surviving spouse is considered exempt, for tax purposes, as part of the marital deduction. 26 U.S.C.A. § 2056(b) (West 2002).

**6.** A bequest is specific if: (1) it is described with such particularity that it can be distin- guished from all of the testator's other property; and (2) the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his general estate. *Hurt v. Smith,* 744 S.W.2d 1, 4 (Tex.1987).

be equal to the maximum marital deduction ... diminished by the value for Federal estate tax purposes of all other items in my gross estate which qualify for the marital deduction and which pass or have passed to my wife under other provisions of this Will or otherwise; provided, however, this gift of property ... *shall be reduced by an amount, if any,* needed to increase my taxable estate as determined for Federal estate tax purposes to the largest amount which, after taking into account all other deductions allowed to my estate for Federal tax purposes and all allowable credits, will result in the least amount of Federal estate tax being imposed on the estate.

(Emphasis added). The Marital Trust represents the marital deduction and creates a life estate for appellant's benefit in all of Rosen's remaining money and real property. Because the marital deduction was unlimited at the time of Rosen's death, *see* 26 U.S.C.A. § 2056, gifting to the Marital Trust "such an amount of property ... as will be equal to the maximum marital deduction" has the effect of placing *all* of Rosen's remaining property—after the specific bequests have been made—into the Marital Trust. However, this amount shall be reduced by an amount, *if any,* needed to take advantage of "allowable credits" (the "potential tax credit reduction amount").

Article V of Rosen's Will, entitled "Family Trust," establishes the Daniel Hunt Rosen Family Trust (the "Family Trust"):

If my wife survives me, I give *all of the residue* of my estate to my Trustee, IN TRUST, to be administered as provided in this Article.

(Emphasis added). The Family Trust was meant to be Rosen's bypass trust. Because of the all-encompassing nature of the Marital Trust, the only possible source of funding for the Family Trust would be the monetary amount, *if any,* by which the Marital Trust would be reduced to take advantage of allowable tax credits. The allowable tax credits at issue are limited to Rosen's unified credit, in the amount of $675,000.

### The Controversy

Rosen's Will first makes specific bequests in Article III. Next, the gifting to the Marital Trust of "such an amount of property ... as will be equal to the maximum marital deduction" has the effect of placing *all* of Rosen's remaining property—after the specific bequests have been made—into the Marital Trust. This amount shall be reduced, however, by an amount, *if any,* needed to take advantage of "allowable credits" (the "potential tax credit reduction amount"). Finally, the Family Trust is funded with "the residue of [Rosen's] estate." Due to the unlimited marital deduction, *all* of Rosen's property, except for the potential tax credit reduction amount and specific bequests, was granted to the Marital Trust. This meant that the *only* possible source of funding for the Family Trust was the potential tax credit reduction amount.

This potential tax credit reduction amount was meant to account for Rosen's unified credit. However, the combined taxable value of the two non-probate assets, $1,017,542, greatly exceeded Rosen's unified credit of $675,000. Once the non-probate assets absorbed the entire unified credit, there were no potential tax credits left which would reduce the Marital Trust. Because the Marital Trust was reduced by zero, there were no assets left to fund the Family Trust.

On June 20, 2001, appellant, individually, as Independent Executrix of Rosen's estate, and as Trustee of the Marital Trust and Family Trust, sought a declaratory judgment as to which property in Rosen's estate would bear the burden of paying federal estate tax and state inheritance tax. Appellant argues that, because Rosen stated the Family Trust would contain "the residue of my estate," his direction to pay estate taxes "out of the residue of my estate without apportionment" meant that taxes should be paid out of the Family Trust *alone*. Because the Family Trust remained unfunded, appellant argues that the Will fails to "specifically direct the manner of apportionment," required by section 322A(b)(1) of the probate code, and therefore the default Texas apportionment statute must apply regardless of Rosen's express waiver.[7] Under section 322A(b)(1), the estate taxes would be borne by the beneficiaries of the assets that gave rise to the taxes. The trusts established for the benefit of Rosen's children, represented by Wells Fargo and Eileen Rosen, respond that requiring the non-probate trusts to pay the estate taxes would be contrary to Rosen's intent to avoid apportionment under section 322A.

The probate court ruled that appellant, as Independent Executrix, must pay all taxes out of the probate assets and that the non-probate assets are not liable for the payment of any taxes.

### The Contentions of the Parties

In this appeal, appellant raises two arguments: (1) because the estate taxes were to be paid out of a specified probate asset, the Family Trust, which is unfunded, section 322A should control the apportionment of estate taxes; and (2) the clauses in Rosen's will regarding maximization of the marital deduction and the minimization of gross estate taxes mandate equitable apportionment in order to fulfill the testator's intent.[8]

Wells Fargo and Eileen Rosen join issue on whether section 322A is applicable, because Rosen specifically directed that estate taxes be paid "without apportionment." They urge that the non-probate assets should not be charged with any portion of the estate and inheritance taxes. However, I believe this case can be resolved without resorting to statutory construction based upon a plain reading of the testator's intent as manifested in the plain language of the Will. Notwithstanding appellant's contentions regarding the application of section 322A in situations where a testator has designated a specific fund to bear the tax burden and that fund remains completely unfunded, I do not reach that issue. Under the plain language of the Will as applied to Rosen's estate at the time of his death, I conclude that the Marital Trust was meant to bear the es-

---

7. Both the parties and the majority cite numerous out-of-state cases relevant to the issue of whether section 322A of the Texas Probate Code should apply in this case. All of these cases are clearly distinguishable. Both I and the majority have been unable to find a single case, like this one, where the specific bequests and trusts all favored a single beneficiary.

Furthermore, appellant argues, in effect, that due to the taxable nature of the non-probate assets, she has been denied an additional amount of property that would have been available to her through the Family Trust. Her argument overlooks the fact that the unified credit is not hers, but rather benefits Rosen's estate.

8. Appellant's argument for equitable apportionment fails to account for the fact that appellant was the primary beneficiary under *both* the Marital Trust and Family Trust. Although the children would inherit the remainder of the Marital Trust, and income from the Family Trust could be used to provide for their education, the income from both trusts was primarily for the benefit of appellant during her lifetime.

tate tax burden.[9]

## DISCUSSION

In construing a will, the court's focus is on the testator's intent. *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 639 (Tex.2000); *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960). This intent must be ascertained from the language found within the four corners of the will. *Lang,* 35 S.W.3d at 639; *Shriner's Hosp. v. Stahl,* 610 S.W.2d 147, 151 (Tex. 1980). The court should focus not on what the testator intended to write, but the meaning of the words actually used. *Stahl,* 610 S.W.2d at 151; *Rekdahl v. Long,* 417 S.W.2d 387, 389 (Tex.1967); *Kirk v. Beard,* 162 Tex. 144, 345 S.W.2d 267, 273 (1961). In this light, courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent. *Stahl,* 610 S.W.2d at 151; *Welch v. Straach,* 531 S.W.2d 319, 322 (Tex.1975); *Huffman,* 339 S.W.2d at 888. It is therefore our duty to determine the effect of Rosen's will based on the meaning of the words Rosen actually used; we must not speculate as to the words Rosen might have used with the benefit of hindsight and thereby redraft the will. *Stahl,* 610 S.W.2d at 151; *Huffman,* 339 S.W.2d at 889. Finally, a will speaks at the time of the testator's death, and it is the estate he then possessed that passes according to the terms of his will. *Stahl,* 610 S.W.2d at 150. We must therefore determine the correct *application* of Rosen's Will based on the facts as they *actually existed* at the time of Rosen's death.

Appellant's argument is premised on the assumption that the Marital Trust is a specific bequest and the Family Trust is a residuary bequest. Texas law has long recognized that all bequests fall into four functional categories: specific, demonstrative, general, and residuary. *Hurt v. Smith,* 744 S.W.2d 1, 4 (Tex.1987). A legacy is classified as specific if: (1) it is described with such particularity so that it can be distinguished from all of the testator's other property; and (2) the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his general estate. *Id.; see also Houston Land Trust Co. v. Campbell,* 105 S.W.2d 430, 433 (Tex.Civ.App.-El Paso 1937, writ ref'd). A legacy is demonstrative if: (1) it is a bequest of sums of money, or of quantity or amounts having a pecuniary value and measure, not in themselves specific; and (2) the testator intended such bequests to be charged primarily to a particular fund or piece of property. *Hurt,* 744 S.W.2d at 4; *Campbell,* 105 S.W.2d at 433. A legacy is a general bequest if: (1) it bequeaths a designated quantity or value of property or money; and (2) the testator intended for it to be satisfied out of his general assets rather than disposing of, or being charged upon, any specific fund or property. *Hurt,* 744 S.W.2d at 4. Finally, a legacy should be classified as a residuary bequest if: (1) the testator intended for the gift to bequeath

---

**9.** One of my concerns with the majority opinion is that it fails to thoroughly analyze the question of whether the equitable apportionment statute, once waived, can be resurrected solely on the ground that the fund from which the will directs that taxes be paid is insufficient to meet the estate's entire tax obligation. While the majority opinion tacitly concedes that, under Texas law, Rosen's will expressly waives the statute's application, *see Peterson*

*v. Mayse,* 993 S.W.2d 217, 222 (Tex.App.-Tyler 1999, no pet.); *Estate of Miller v. Commissioner,* 76 T.C.M. (CCH) 892 (1998), it simply assumes that an insufficiency of funds automatically triggers the statute's reinstatement despite a valid express waiver to the contrary. This determination is not only a question of first impression, but a complex legal issue requiring, in my opinion, more analysis than it is given by the majority.

everything left in the estate, after all debts and legal charges have been paid, and after all specific, demonstrative and general gifts have been satisfied. *Id.; see Stahl,* 610 S.W.2d at 152.

Appellant argues that because the Marital Trust is a specific bequest, the Family Trust therefore constitutes the "residue" of the estate. According to appellant's argument, because Rosen directed that estate taxes be paid "out of the residue of my estate," his direction must fail because the Family Trust is unfunded. Therefore, appellant argues that the apportionment scheme of section 322A must then apply.

I disagree with appellant's characterization of the Marital and Family Trusts. When classifying bequests in a will, we must consider the testator's intent by looking at the application of the provisions of the will rather than by reaching an arbitrary determination based upon a ritualistic classification. *Hurt,* 744 S.W.2d at 4; *Jacobs v. Sellers,* 798 S.W.2d 24, 27 (Tex. App.-Beaumont 1990, writ denied). Rosen's specific bequests were contained in Article III of the Will. Although appellant contends that the Marital Trust constitutes an additional specific bequest, the Marital Trust fails to meet either part of the definition of a specific bequest. First, specific bequests are described with such particularity so as to distinguish them from all of the testator's other property. The effect of the unlimited marital deduction, however, is to bequeath *all* of Rosen's other property—except for the potential tax credit reduction amount—to the Marital Trust. Bequeathing "such an [unlimited] amount of property" cannot be characterized as describing with such particularity as to distinguish the gift from all of the testator's other property. *See Hurt,* 744 S.W.2d at 4; *Campbell,* 105 S.W.2d at 433. The Marital Trust, in fact, *is* all of Rosen's other property. Second, with a specific bequest, the testator intends the beneficiary to receive a particular item, rather than cash or other property from his general estate. *Hurt,* 744 S.W.2d at 4; *Campbell,* 105 S.W.2d at 433. Here, again, all particular items have been disposed of in Article III, and Rosen leaves *all* remaining cash and other property—except for the potential tax credit reduction amount—to the Marital Trust. By definition, the Marital Trust *is not* a specific bequest.

I next address how the Marital Trust *should* be characterized. The Marital Trust in fact constitutes the residue of Rosen's estate. Because the marital deduction was unlimited at the time of Rosen's death, *see* 26 U.S.C.A. § 2056, gifting to the Marital Trust "such an amount of property . . . as will be equal to the maximum marital deduction" has the effect of placing *all* of Rosen's remaining property—after the specific bequests have been made—into the Marital Trust. This amount shall be reduced, however, by an amount, *if any,* needed to take advantage of the potential tax credit reduction amount. Because the Marital Trust was reduced by *zero,* it encompasses *all* of Rosen's property after the specific bequests have been made. In other words, the Marital Trust comprises "everything left in the estate, after all debts and legal charges have been paid, and after all specific, demonstrative and general gifts have been satisfied"; this *is* the definition of a residuary estate. *Hurt,* 744 S.W.2d at 4. Because the Marital Trust satisfies the effect, as well as the language, of a residuary bequest, the residue of Rosen's estate is within the Marital Trust.

My characterization of the Marital Trust is bolstered by the basic purpose of a residuary estate, to prevent partial intestacy. *Wright v. Greenberg,* 2 S.W.3d 666, 673 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The Marital Trust is constructed so as to maximize the marital deduction,

which is unlimited. Because the Family Trust never came into being, the Marital Trust contains *all* of Rosen's property not otherwise devised. In effect, this includes any property Rosen may not have provided for in his will. The Marital Trust then meets not only the *definition,* but also the *purpose,* of a residuary estate. Due to the all-encompassing nature of the Marital Trust, I conclude that it contains "the residue of [Rosen's] estate."

My conclusion stands even though Rosen did not use the word "residue" in establishing the Marital Trust. Texas courts have determined residuary estates to exist even where the word "residue" is not used. *See, e.g., Sewell v. Sewell,* 266 S.W.2d 924, 926 (Tex.Civ.App.-Texarkana 1954, writ ref'd n.r.e.) (general gift of "rest of all the property," following several specific gifts, created residuary clause); *Wolf v. Hartmangruber,* 162 S.W.2d 112, 116 (Tex.Civ.App.-Fort Worth 1942, no writ) (phrase "all my property shall be equally divided among all of my children" was sufficient to constitute residuary clause). Absent the phrase "this [Marital Trust] . . . shall be reduced by an amount, if any, needed to [take advantage of] all allowable [tax] credits," there would be no question that the Marital Trust satisfies the definition of a residuary estate. This phrase, combined with Rosen's use of the word "residue" in constructing the Family Trust, raises the question of whether the Family Trust constitutes the residuary estate.

Rosen uses the phrase "all of the residue of my estate" in the granting clause creating the Family Trust. However, this is not by itself dispositive. First, creation of the Family Trust is contingent upon the existence of available credits by which the Marital Trust would be reduced. A residuary clause may be a contingent bequest; if the contingency fails, the bequest fails as well. *See, e.g., Betts v. Haggard,* 495

S.W.2d 602, 606 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.) (paragraph Fourth was contingent residuary clause to be effective only if the bequests made in paragraphs Second or Third became ineffective); *Fain v. Fain,* 335 S.W.2d 663, 665 (Tex.Civ. App.-Fort Worth 1960, writ ref'd) (residuary clause was conditioned on wife predeceasing testator, and failure of wife to predecease testator meant residuary clause failed, even though it had effect of testator dying intestate as to some property). The Family Trust was conditioned on the existence of a potential tax credit reduction amount, and this condition never occurred. Consequently, the Family Trust never came into existence. Therefore, because the Family Trust was never created, language used by the testator in that section of the Will is a nullity.

Indeed, the words "if any" in the "reduced by" clause indicate Rosen's awareness of the possibility that there might in fact be no available credits by which to reduce the Marital Trust and fund the Family Trust. Because the non-probate assets exceeded the unified credit, leaving no allowable credits and therefore reducing the Marital Trust by zero, this is exactly the situation that confronts this Court.

To hold under Rosen's will that there is no residuary estate, as the majority does, requires us to completely disregard the all-encompassing functional nature of the Marital Trust, as well as the purpose and definition of a residuary estate according to Texas case law. Because the Marital Trust contains the residue of Rosen's estate, I would affirm the probate court's ruling that the non-probate assets are not liable for any portion of the estate and inheritance taxes. Because the majority concludes otherwise, I respectfully dissent.